(No. 14831.—Writ awarded.)

THE PEOPLE *ex rel.* Roberts & Schaefer Company, Relator, *vs.* LOUIS L. EMMERSON, Secretary of State, Respondent.

*Opinion filed October 21, 1922—Rehearing denied Dec. 13, 1922.*

1. CORPORATIONS—*annual franchise tax required by section 105 of Corporation act is a tax on authorized capital stock.* The annual franchise tax required by section 105 of the Corporation act to be paid by corporations doing business in the State is a tax on the authorized capital stock of such corporations and not a property tax, and the value of the corporation assets does not in any way measure the amount of tax to be paid.

2. SAME—*what is meant by authorized capital stock of a corporation.* Corporations organized and doing business in Illinois are required to have an authorized capital stock, which is the sum fixed by the charter or articles of incorporation as the amount paid in or necessary to be paid into the treasury of the corporation to secure the issuance of the total number of shares of stock authorized by the articles of incorporation; but the term does not include the funds or capital of the company, which may fluctuate with profits or losses, as the capital stock remains invariable until changed by authority of the State.

3. SAME—*when annual franchise tax on stock of no par value is based on amount paid in.* The annual franchise tax required by section 105 of the Corporation act to be paid on stock of no par value is to be computed on the amount for which the stock was issued and is not based on a par value of $100 per share, as provided in sections 96, 101 and 107, which relate to other classes of corporations, as the sentence placing such value upon the stock is omitted from section 105 and the court cannot read such sentence into the section.

ORIGINAL petition for *mandamus*.

JOHNSON, MORAN, PALTZER & O'DONNELL, for relator.

EDWARD J. BRUNDAGE, Attorney General, (JAMES W. GULLETT, and CLARENCE N. BOORD, of counsel,) for respondent.

Mr. CHIEF JUSTICE THOMPSON delivered the opinion of the court:

The relator, the Roberts & Schaefer Company, is an Illinois corporation originally organized with a capital stock of $100,000, divided into 1000 shares of the par value of $100 each. In June, 1921, the stockholders, by proper amendment to the charter of the corporation, changed the old stock to preferred stock and then increased the capital stock of the corporation by issuing 10,000 shares of stock with no par value. The resolution effecting this change was as follows:

"*Resolved further,* that the capital stock of this company is hereby increased from $100,000, consisting of 1000 shares of preferred stock of the par value of $100 each, by the additional issue of 10,000 shares of no par value common stock. Such stock shall be fully paid up and non-assessable upon the payment of five dollars for each share in cash or property, as may be determined by the board of directors. The articles of incorporation are amended accordingly."

A certificate of the increase of capital stock was duly filed with the Secretary of State showing that the amount of increased capital stock which it was proposed to issue at once was 10,000 shares of common stock having no par value, which was of the value of $50,000; that all this increased capital stock was to be issued at once for property, and that the property for which the stock was to be issued was "$50,000, * * * to be transferred from the surplus account of the company to capital account in full payment of the 10,000 shares of no par value common stock." In February, 1922, relator filed its annual report with the Sec-

retary of State, in which it stated that the amount of its
authorized capital stock was $100,000 preferred stock and
10,000 shares of no par value stock issued and paid up at
five dollars a share.

The question presented by this proceeding is the amount,
of the annual franchise tax which relator must pay to the
Secretary of State. Section 105 of the general Corporation
act provides: "Each corporation for profit, including rail-
roads, except insurance companies, heretofore or hereafter
organized under the laws of this State or admitted to do
business in this State, and required by this act to make an
annual report, shall pay an annual license fee or franchise
tax to the Secretary of State of five cents on each $100
of the proportion of its capital stock, authorized by its char-
ter in the office of the Secretary of State, represented by
business transacted and property located in this State, but
in no event shall the amount of such license fee or fran-
chise tax be less than that required by this act of corpora-
tions having no tangible property or business in this State."
(Hurd's Stat. 1921, p. 813.)

All of the property of relator is located in this State
and all of its business is transacted here. It contends that
the annual franchise tax should be assessed upon its capital
stock of $150,000, which, computed at five cents on each
$100, would amount to $75, thereby bringing it within the
minimum tax of $200, which sum it has tendered to the
Secretary of State. On the other hand, the Secretary of
State contends that the 10,000 shares of stock of no par
value should be reckoned at $100 a share for the purpose
of computing the annual franchise tax, and that relator
should therefore pay a tax upon a capital stock of $1,100,-
000, which at five cents on each $100 amounts to $550.
The Secretary of State has refused to accept the amount
tendered by relator and it has brought this original proceed-
ing, requesting this court to award its writ of *mandamus*
against respondent commanding him to accept the sum of

$200 as and for the franchise tax due from relator for the year beginning July 1, 1922. Respondent has filed a general demurrer to relator's petition, and the cause has been argued and submitted for decision on the issue of law raised by this demurrer.

The tax required by section 105, above quoted, to be paid by corporations doing business in this State is a tax on the authorized capital stock of such corporations. It is not a property tax, and so the value of the corporate assets does not in any way measure the amount of tax to be paid. In construing section 105 it is necessary to keep in mind the distinction between capital stock and capital. The capital stock of a corporation is the sum total fixed by the charter or articles of incorporation as the amount paid in or to be paid in as the capital upon which the corporation is to do business. The capital may be increased by surplus profits or diminished by losses, but this does not increase or diminish the amount of capital stock. The funds or capital of the company may fluctuate; its capital stock remains invariable until changed by authority of the State. (5 Fletcher's Cyc. on Corp. 5681; 14 Corpus Juris, 379.) "The term 'capital stock' of the corporation does not designate the shares of stock owned by the shareholder, either separately or in the aggregate, or the identical lands, chattels or other articles of property owned by the corporation, but it does designate the aggregate property of the corporation,—not in separate parcels but as an homogeneous unit." *Central Illinois Service Co.* v. *Swartz,* 284 Ill. 108.

Section 4 of the general Corporation act requires that the verified statement of incorporation must set forth, *inter alia,* "(6) the number of shares into which the capital stock is to be divided, whether all or part of the same shall have a par value, and if so, the par value thereof, which shall not be less than $5, nor more than $100, per share, and whether all or part of the same shall have no par value, and if there is to be more than one class of stock created,

a description of the different classes, the number of shares in each class, and the relative rights, interests and preferences each class shall represent; * * * (8) the total amount of authorized capital stock." Section 30 requires that "each certificate for shares of the capital stock shall have stamped or printed thereon when issued the amount actually received by the corporation for such stock." Section 32 provides: "The corporation may issue and sell its shares of stock having no par value from time to time for such consideration, not less than $5 nor more than $100 per share, as may be prescribed in the certificate of incorporation or as from time to time may be fixed by the board of directors pursuant to authority conferred in such certificate. The consideration received for such shares shall be truthfully stated in all papers required to be filed in the office of the Secretary of State and in case such shares are issued for property the appraised value of such property shall be given."

From these sections it is clear that a corporation organized and doing business in this State is required to have an authorized capital stock, and the incorporators are required to state, under the penalty of perjury, the total amount of authorized capital stock. Whether the several shares shall have a par value or not, the number of shares into which the capital stock is to be divided must be stated, and the amount the corporation actually receives for each share, which in the case of shares of no par value shall be not less than $5 nor more than $100, must be stamped or printed on each certificate.

Section 105, as we have seen, requires each corporation to pay an annual franchise tax on its authorized capital stock. Section 102 provides that each corporation shall make a verified annual report in writing to the Secretary of State on forms to be prescribed and furnished by him. This annual report shall disclose, among other things, "such facts as are necessary to enable the Secretary of State to

ascertain the proportion of its capital stock represented by business transacted and tangible property located in this State, and such other information as may be necessary or appropriate in order to assess the annual license fee or franchise tax." This report furnishes to the Secretary of State the total amount of authorized capital stock, and the amount of the annual franchise tax is "five cents on each $100 of the proportion of its capital stock, authorized by its charter in the office of the Secretary of State, represented by business transacted and property located in this State," provided that the amount of such tax shall not be less than that required by section 107 of corporations having no tangible property or business in this State. The amount of authorized capital stock means the total sum of money necessary to be paid into the treasury of the corporation to secure the issuance of the total number of shares of stock authorized by the articles of incorporation. The total amount of authorized capital stock of relator, according to the verified annual report filed with the Secretary of State, is $150,000.

Respondent contends that each share of capital stock of no par value shall be considered to be of the value of $100 for the purpose of estimating the amount of taxes to be paid under section 105. As a basis for this contention he argues that the last sentence in section 107 should be read as a part of section 105. This sentence reads: "In the event that the corporation has stock of no par value, its shares, for the purpose of fixing such fee, shall be considered to be of the par value of $100 per share." Section 107 is dealing with a class of corporations entirely different from the class with which section 105 deals. The corporations mentioned in section 107 are those which from their annual reports appear to have no tangible property located in this State and are transacting no business in this State. For such corporations a nominal annual franchise tax is provided, ranging, according to the size of the corporations,

305—23

from $10 to $1000. It is significant that the legislature omitted the quoted sentence from section 105 while it added the sentence to sections 96, 101 and 107: The four sections last named are all placed under a general heading, "Fees and franchise taxes." This heading was no doubt inserted to control the scope and general application of the general words used in the sections grouped under it. Sections 96 and 101 provide the method for ascertaining the amount of the initial fee,—the former for obtaining a charter for a domestic corporation, and the latter for obtaining a certificate of authority to do business in this State for a foreign corporation. In sections 96, 101, 105 and 107 the legislature was dealing with franchise taxes, and in three of these sections it specifically provided that if the corporation had capital stock of no par value, its shares, for the purpose of fixing the fee, should be considered to be of the par value of $100 each. The provision was wholly omitted from section 105. If the legislature intended this provision to apply to all sections dealing with franchise taxes, we would naturally expect the legislature to have declared in a single section that stock of no par value should be considered to be of the par value of $100 a share for the purpose of fixing franchise taxes in all cases. Having included the provision in three sections dealing with franchise taxes and having omitted the provision from section 105, an elementary rule of statutory construction prohibits the court from reading into section 105 language not found there. The meaning and intent of the legislature are to be ascertained from the words employed, without adding thereto or taking therefrom. (*Steere* v. *Brownell,* 124 Ill. 27; *Chicago, Milwaukee and St. Paul Railroad Co.* v. *Dumser,* 109 id. 402.) The language used in section 105 is neither ambiguous nor uncertain and so there is no room for construction. The section should be construed as it is written.

The demurrer to the petition is overruled and the writ of *mandamus* is awarded.

*Writ awarded.*