(No. 15573.—Judgment affirmed.)
THE ROBERTS & SCHAEFER COMPANY, Appellant, *vs.*
LOUIS L. EMMERSON, Secretary of State, Appellee.

*Opinion filed June 17, 1924—Rehearing denied October 9, 1924.*

1. CORPORATIONS—*general Corporation act of 1919 must be construed as a whole.* The general Corporation act of 1919 is a revision of the laws regarding corporations for pecuniary profit, and it must be construed as a whole.

2. SAME—*no-par-value stock must be valued by statute to compute franchise tax.* There is no provision of the general Corporation act of 1919 which requires that the money value of no-par-value stock be fixed in the statement of incorporation, but under section 32 it may be fixed or altered from time to time by the board of directors, and in order to compute an annual license or franchise tax such as is levied upon capital stock by section 105, it is necessary and proper that the value of no-par-value stock be fixed by statute for the purpose.

3. SAME—*amendment of 1923 to section 105 of Corporation act makes proper and uniform classification for assessing franchise tax.* The amendment of 1923 to section 105 of the general Corporation act of 1919, putting a value on stock of no-par-value for the purpose of computing the annual franchise tax levied by said section, makes a proper, uniform and necessary classification of corporate stock for such purpose and does not violate section 1 of article 9 of the constitution, requiring that a franchise tax shall "be uniform as to the class upon which it operates."

4. SAME—*amendment of 1923, valuing no-par-value stock for taxation, does not violate due process of law.* The amendment of 1923 to section 105 of the Corporation act of 1919, putting a value on no-par-value stock for the purpose of computing the annual franchise tax levied by said section, does not impair the obligation of contracts, take property without due process of law or deny equal protection of the laws.

THOMPSON, J., dissenting.
DEYOUNG, J., took no part.

APPEAL from the Circuit Court of Sangamon county; the Hon. E. S. SMITH, Judge, presiding.

JOHNSON, MORAN, PALTZER & O'DONNELL, for appellant.

EDWARD J. BRUNDAGE, Attorney General, (CLARENCE N. BOORD, of counsel,) for appellee.

Mr. CHIEF JUSTICE CARTER delivered the opinion of the court:

Appellant, the Roberts & Schaefer Company, a domestic corporation, filed its bill in the circuit court of Sangamon county against Louis L. Emmerson, Secretary of State, alleging that the total amount of its authorized capital stock is $150,000; that it is divided into 1000 shares of preferred stock of the par value of $100, and 10,000 shares of common stock of no par value, issued as fully paid at $5 a share; that under section 105 of the general Corporation act its annual franchise tax should be $75; that the amendment to the section added in 1923, fixing the value of all stock of no par value at $100 a share for the purpose of the annual license or franchise tax, is unconstitutional; that the Secretary of State had refused to accept $75 tendered to him by appellant and demands $550 as the annual franchise tax due from appellant and threatens to enforce his demand by inflicting the statutory penalty. Appellant prayed that the court grant a mandatory injunction against appellee to accept $75 in full for the annual franchise tax due from appellant for the year beginning July 1, 1923, and for other relief. On demurrer the court held the amendment constitutional and that the tax demanded by the Secretary of State was due from appellant. Complainant having elected to abide by its bill, the bill was dismissed for want of equity. This appeal followed.

It is urged that the language at the end of section 105 of the Corporation act added by amendment in 1923 is unconstitutional because violative of section 1 of article 9 of the constitution, which authorizes the General Assembly to tax corporations "owning or using franchises and privileges, in such manner as it shall from time to time direct by general law, uniform as to the class upon which it operates."

Section 105 as amended in 1923 provides: "Each corporation for profit, including railroads, except insurance companies, heretofore or hereafter organized under the laws of this State or admitted to do business in this State, and required by this act to make an annual report, shall pay an annual license fee or franchise tax to the Secretary of State of five cents on each $100 of the proportion of its capital stock, authorized by its charter in the office of the Secretary of State, represented by business transacted and property located in this State, but in no event shall the amount of such license fee or franchise tax be less than that required by this act of corporations having no tangible property or business in this State. *In the event that the corporation has stock of no par value, its shares for the purpose of fixing such fees shall be considered to be of the par value of $100 per share.*" (Smith's Stat. 1923, p. 507.)

All of the property of appellant is located and all of its business is transacted in this State. If the language italicized in section 105 above is unconstitutional, the appellant is required only to pay the smaller amount of $75, according to its contention; if constitutional, the company is required to pay the larger amount demanded by the Secretary of State. A decision to the effect that the italicized language in section 105 is unconstitutional will also invalidate the same language found at the end of section 107 as originally passed in 1919.

Appellant's contention is that under the Corporation law of Illinois its no-par-value stock must be valued at $5 a share,—the amount at which it is fully paid up and the lowest amount for which, under the general Corporation act, no-par-value stock may be sold. Computing the annual franchise or license tax upon this basis appellant would be obligated to pay $75. The larger amount demanded by the Secretary of State is based upon the amendment of 1923, providing that no-par-value stock shall be considered as of the par value of $100 per share for the computation of the

franchise tax. Appellant contends that the total amount of authorized capital stock of a corporation must be stated in money in the application for incorporation, and that this amount is the necessary basis for the franchise tax, and that to establish a specific basis of $100 for the valuation of no-par-value stock is unconstitutional, as establishing a method of taxation not uniform as to the class of corporations upon which it operates.

Before passing on the constitutional issue raised in this case it is necessary to determine the place of no-par-value stock in the general Corporation act as revised in 1919. Such an inquiry is necessary to discover whether there is an actual discrimination bringing the amendment of 1923 within the constitutional prohibition against the taxation of corporations "owning or using franchises and privileges" in a manner otherwise than "uniform as to the class upon which it operates." The general Corporation act of 1919 was a revision of the laws of Illinois regarding corporations for pecuniary profit. It must be construed as a whole. In its construction it must be borne in mind that no-par-value stock was an innovation introduced in the 1919 revision of the corporation laws of this State,—a revision based primarily upon previously existing laws providing only for stock with a par value. It will be well to review briefly the provisions of the general Corporation act bearing upon no-par-value stock. The provisions of that act of primary interest in this connection are paragraphs 6, 8, 9 and 10 of section 4, and sections 23, 28, 32, 53, 96, 101, 105 and 107.

Inasmuch as the basis for the construction of the act rests primarily upon section 4, prescribing the requirements of the statement of incorporation, it will be worth while to set out the germane paragraphs of that section. The statement of incorporation must indicate, among other things: "(6) The number of shares into which the capital stock is to be divided, whether all or part of the same shall have a par value, and if so, the par value thereof,

which shall not be less than $5, nor more than $100 per share, and whether all or part of the same shall have no par value. * * * (8) The total amount of authorized capital stock. (9) The amount of such stock which it is proposed to issue at once (which shall not be less than $1000, all of which must be subscribed.) (10) The payment of at least one-half of the capital stock, which it is proposed to issue at once, with a description of the nature and value of property, if any, paid for such capital stock."

Appellant contends that the provisions quoted above from section 4 require the statement and articles of incorporation to prescribe definitely, in money, the total value of all authorized capital stock, whether of par value or no par value, or both, and that such articles of incorporation necessarily furnish the basis, and a definite basis, for the franchise tax imposed under section 105. Appellee contends, on the other hand, that "the total amount of authorized capital stock," in so far as it is represented by shares of no par value, is not required to be stated in dollars in the articles of incorporation, and that it is therefore necessary for the legislature to establish a definite value for such shares in order to fix a basis for computing the annual license or franchise tax upon the total money value of authorized capital stock.

Section 4 expressly requires the statement of incorporation to set forth the number of shares into which the capital stock is to be divided, indicating whether or not all or a part of the same shall have no par value. This is supplemented by a required statement of the total amount of authorized capital stock; a statement of the amount of such stock to be issued at once, which shall not be less than $1000; and the payment of at least one-half of the capital stock which is proposed to be issued, at once. Appellant contends that the reference to the amount of stock means a definite amount in money, and that this construction becomes clear when the statement regarding amount of author-

ized capital stock is coupled with the requirement that the amount proposed to be issued at once shall not be less than $1000. Appellee, on the other hand, insists that the very nature of no-par-value stock implies an absence of specific value, and that the requirements of section 4 are met, and can readily be met, by a statement of the value of proposed par-value stock and of the number of shares of proposed stock of no par value. He contends that under his construction the minimum of $1000 can be met either by the issuance of par-value stock, or of no-par-value stock whose sale price is determined in the articles of incorporation, or by a combination of the two. Both the appellant and the appellee contend that their constructions are supported by other provisions of the act. It may be worth while, therefore, to examine briefly certain other sections of the act.

Section 28 relates to the report of stock issued within the authorized limit but not previously reported to the Secretary of State as issued. The second numbered paragraph of this section provides that the statements as to the issuance of such additional stock shall contain a statement that "at least one-half has been paid in," just as paragraph 10 of section 4 requires a similar statement in connection with the original issue of capital stock. It is contended that section 28 makes it clear that no-par-value stock is to have a money value specified in the original statement of incorporation, such money or par value of no-par-value stock to be controlling as the basis for taxation. It is quite clear that if section 4 does not require the amount of original authorized capital stock to be stated in money, whether it is par-value stock or no-par-value stock, section 28 does not make such a requirement, because it merely imposes as to future issues a condition imposed by section 4 as to original issues. It seems more reasonable to assume that sections 4 and 28 should be construed with reference to the first sentence of the second paragraph of section 32, which

reads as follows: "Subject to the provisions of this sec-
tion, the corporation may issue and sell its shares of stock
having no par value from time to time *for such consider-
ation, not less than $5 nor more than $100 per share, as
may be prescribed in the certificate of incorporation or as
from time to time may be fixed by the board of directors
pursuant to authority conferred in such certificate.*" If sec-
tion 32 is to be given effect, it clearly indicates that the de-
termination of the sale value of no-par-value stock, within
the limits prescribed by section 32, may under certain con-
ditions be made after the statement of incorporation. If
such sale value is determined after the statement of incorpo-
ration, it follows either that the statement of incorporation
is not required to include a statement of such value, or that
a value appearing in the original statement of incorporation
is not necessarily controlling as to the future sale value of
such stock.

Section 32, when construed with section 4, directly sup-
ports the contention of appellee that the money value of no-
par-value stock is not required to be contained in the state-
ment of incorporation, and that some definite value must
be placed upon such stock by statute, for the purpose of
computing an annual license or franchise tax. The amount
actually received for no-par-value stock is, of course, capable
of determination when, under the terms of section 32, a
sale value has been placed upon such stock, but may not be
known at the time of filing the statement of incorporation.
By the terms of section 32 it would appear that if a money
value for no-par-value stock were stated in the original
statement of incorporation, an amendment to the certificate
of incorporation may permit a subsequent valuation of such
stock by the board of directors for the purpose of sale.
Section 32 is in the alternative, and expressly permits the
sale of no-par-value stock at an amount specified in the
certificate of incorporation, or at an amount fixed by the
board of directors pursuant to authority conferred in such

certificate. Apparently a combination of the two plans, is permitted, and the original certificate may specify a value of issues to be made at once, and at the same time authorize the directors to fix a sale value for subsequent issues. In all of the cases in which the articles of incorporation employ the second alternative, either as to the whole or a part of proposed no-par-value issues, the money value of the total authorized capital stock cannot be known at the time of filing the original statement of incorporation. Under such conditions the whole or a part of no-par-value issues must be stated in number of shares and not in money, for the money value is not yet determined.

As we construe the general Corporation act, the statement of incorporation may specify one or more of three types of authorized stock issues: (1) Par-value stock, whose par value must appear in the statement; (2) no-par-value stock, upon which a value is prescribed in the certificate of incorporation; (3) no-par-value stock whose value "from time to time may be fixed by the board of directors pursuant to authority conferred in such certificate." Apparently the value specified in the statement of incorporation for the second class of stock just mentioned may, so far as such stock is unsold, be subsequently altered by the board of directors if the certificate of incorporation confers such authority. The money value of authorized stock issues of both the second and third classes may, therefore, not be capable of determination until a subsequent action of the board of directors, although the certificate of incorporation must almost, of necessity, fix a sale value upon no-par-value stock that is proposed to be issued at once. The tax is based upon a money valuation of authorized capital stock. No pecuniary standard for measuring the value of such authorized stock exists as to the third group specified above, and the certificate of incorporation may apparently be so drawn as to permit variations by the board of directors as to the second group. It is difficult to discover how, under

these circumstances, the act can be construed to require that the statement of incorporation places a definite money value upon all shares of no-par-value stock.

In *Armstrong* v. *Emmerson,* 300 Ill. 54, we spoke of the capital stock as "an invariable sum fixed by the charter," and in *People* v. *Emmerson,* 305 Ill. 348, we say that the capital stock "is the sum total fixed by the charter or articles of incorporation." These statements are precisely correct with respect to corporations having only par-value stock, but under section 32 of the general Corporation act of 1919 an element entering into this sum as to no-par-value stock is not required to be fixed in money by the articles of incorporation but may be left to the later determination of the directors.

Section 23 of the general Corporation act makes the directors liable for assenting to an indebtedness in excess of the capital of the corporation or for declaring or assenting to a dividend that will impair its capital, and section 53 imposes a liability upon each stockholder "to pay his *pro rata* share of such debts and liabilities, to the extent of the unpaid portion of the stock, after exhausting the assets of such corporation." Section 53, and the liability thereunder, apply only after the sale of stock, whether the value for such sale be determined by the articles of incorporation, or subsequently by the directors under the authority of the articles of incorporation. Substantially the same statement applies to section 23. If the sale value has not been fixed upon no-par-value shares of capital stock either by the articles of incorporation or by a subsequent authorization of the board of directors, it necessarily follows that such stock has not yet been sold. Section 23, in dealing with the liability of directors, says that "for the purposes of this section the capital of the corporation shall be considered as the aggregate amount paid in on its shares of capital stock issued and outstanding." The liability of directors and shareholders under sections 23 and 53 can accrue only

after a sale value has been fixed upon the no-par-value stock and the stock itself is outstanding. They have no bearing as to the method of fixing such value or upon the construction of the language of section 4, and in no way support a view that section 4 requires the statement of incorporation to give a money value to no-par-value stock authorized to be issued.

Construing the general Corporation act as a whole and with reference to the purpose in authorizing no-par-value stock, we are of the opinion that there is no requirement that a money value be given to no-par-value stock authorized by the articles of incorporation. If the articles of incorporation do not place a money value upon no-par-value stock authorized to be issued, and if, as is provided by section 32, they vest in the directors an authority at some subsequent time to fix a sale value of such stock, it necessarily follows that under appellant's construction the annual license or franchise tax imposed upon the corporation will prove ineffective as to corporations having no-par-value stock, because there will be no total money value of authorized capital stock upon which to compute the tax. Unless such corporations exercise their option to fix a cash value for all such stock in the original articles of incorporation, or unless a definite value is fixed upon such stock by statute for the purpose of computing such a tax, the State has no fixed basis for imposing the tax, while it has such a basis for corporations using par-value stock alone.

The issue presented in this case therefore comes down to this: The General Assembly cannot, under the law as it now stands, effectively levy an annual license or franchise tax upon corporations having no-par-value stock unless it has authority to prescribe a definite value for such stock for the purpose of computing a franchise tax. The General Assembly must either require the corporation to place a definite and specific value upon all stock, or it must have authority to fix such a value for the purpose of computing

the tax on no-par-value stock if it is to retain the power to levy an annual franchise tax based upon the authorized capital stock of a corporation. To require the corporation to place a specific value, in advance, on all stock is to abolish no-par-value stock. The issue becomes one as to whether the General Assembly has authority, at the same time, to authorize no-par-value stock, and to fix a definite valuation upon such stock for the purpose of computing franchise taxes. The General Assembly has taken the view that for the purpose of computing fees and taxes it is necessary to place a definite value, in advance, upon authorized no-par-value stock, whose actual sale value may, if the corporation desires, be subsequently determined by action of the corporation. This is clearly indicated by the fact that the general Corporation act as passed in 1919 contained in sections 96, 101 and 107 provisions that for computing initial fees and for franchise taxes on certain corporations, no-par-value stock should be considered to be of the par value of $100, and by the amendment of 1923 to section 105 of the act making the same provision with reference to the normal computation of the annual license or franchise tax.

It is objected that the amendment of 1923 to section 105 violates the requirement of section 1 of article 9 of the constitution that with respect to corporations owning or using franchises and privileges the tax shall be "uniform as to the class upon which it operates." It is contended that there is no distinction authorizing a classification of no-par-value stock differently from par-value stock. Inasmuch as the annual license or franchise tax is computed as a percentage of the record value of authorized capital stock of par value, it is contended that uniformity requires the computation of the tax upon the record value of no-par-value stock as well. The defect of this argument is that by section 32 of the act the board of directors of a corporation may be authorized to sell no-par-value stock for such consideration as "from time to time may be fixed by the board

of directors pursuant to authority conferred in such certificate," while paragraph 6 of section 4 requires the statement of incorporation to give the par value of all authorized par-value stock. The franchise tax is based upon authorized capital stock, and the reports required by section 28 do not aid in obtaining a specific money value for all authorized but unissued no-par-value stock. Such no-par-value stock as is authorized but as yet has no sale value fixed by the board of directors will escape unless a value is attributed to it by law for the computation of the tax, while all authorized but unissued par value stock will be taxable. There is a record of the value of authorized stock of par value; there is no record value required of all authorized stock of no par value. There is thus a clear distinction between the two classes of authorized shares. The tax "must be uniform as to the class upon which it operates." A fixed rule of value for the computation of the franchise tax may be supported with reference to no-par-value shares if there is a sufficient distinction between corporations without no-par-value stock and corporations with no-par-value stock.

In *Stewart* v. *Brady*, 300 Ill. 425, we said with respect to the legislative power of classification: "Its classification of the objects of legislation is not required to be scientific, logical or consistent if it is reasonably adapted to secure the purpose for which it is intended and is not purely arbitrary. Legislative classification does not have to be so broad and comprehensive as to include all the evils which might by possibility be brought within its terms. Classification must be accommodated to the problems of legislation and must be palpably arbitrary to authorize a judicial review of it. It cannot be disturbed by the courts unless they can see clearly that there is no fair reason for the law that would not require with equal force its extension to others whom it leaves untouched." We further said at page 436 of the same case: "One who assails the classification in such a law must carry the burden of showing that it does

not rest upon any reasonable basis but is essentially arbitrary.  A distinction in legislation is not arbitrary if any state of facts reasonably can be conceived that would sustain it, and the existence of that state of facts at the time the law was enacted must be assumed.  (*Lindsley* v. *Natural Carbonic Gas Co.* 220 U. S. 61.)   It makes no difference that the facts may be disputed or their effect opposed by argument and opinion of serious strength."

Before 1919 no-par-value stock was not authorized by the laws of Illinois.  The act of 1919 authorized the use of such stock, and the amendment of 1923 says that shares of no-par-value stock shall be considered of the value of $100 for the purpose of computing the annual franchise tax.  There is a sufficient difference between par-value stock and no-par-value stock to authorize this definite basis of valuation in computing the franchise tax of corporations authorized to issue no-par-value stock.  The General Assembly has said substantially that corporations desiring to use no-par-value stock shall make that stock of such value, in actuality, as to bear a franchise tax computed upon a $100 valuation, or if the stock is not of such value, that the corporation shall bear this tax as one of the burdens of exercising the privilege conferred by law of using no-par-value stock.  This is little different, in principle, from saying, as section 32 of the general Corporation act says, that no-par-value stock shall not be sold for less than $5 nor more than $100 per share.  The rules of valuation laid down in the general Corporation act as amended in 1923 are proper as applied to the no-par-value stock of corporations using such stock and apply uniformly to all no-par-value stock.  This classification is reasonable and proper. Moreover, it is substantially necessary to the determination of fees and franchise taxes.

We regard the view here taken as supported by the opinion in *American Uniform Co.* v. *Commonwealth,* 237 Mass. 42, although that case was based in large part upon the

right of the State to admit or refuse admission to a foreign corporation. In that case the court said: "Corporations with capital stock of a par value afford an easy measure for the computation of the excise. There is no such ready-at-hand measure for the computation of the excise upon corporations having capital stock without par value. Some excise must be exacted from them in fairness to other foreign corporations. The latter would have just ground for complaint if they were exempted altogether. It cannot be deemed oppressive to enact a general rule as to all such corporations that the excise shall be measured by the par value which most frequently prevails in corporations whose stock has a par value." Although the issues were not the same, some of the language in *Detroit Mortgage Corp.* v. *Secretary of State,* 211 Mich. 320, also supports the view we have here taken.

We do not regard the case of *People* v. *Mensching,* 187 N. Y. 8, as authority upon the point here in issue. That case involved a stock transfer tax, and as construed by the court, each share of stock was taxed at a fixed sum, regardless of its face value. That case decides merely that stocks of different face values may not be taxed at the same amount. It dealt with stocks whose values could readily be determined to be different. The issue here is as to a distinction between shares of stock having a par value and shares of stock having no par value.

*People* v. *Walsh,* 195 N. Y. Supp. 184, 202 App. Div. 651, is not necessarily opposed to the view we take in this case. It is true that the *Walsh case* held unconstitutional a New York statute valuing no-par-value stock at $100 per share for purposes of taxation, but the New York tax was based upon capital issued, and the value of such capital is determinable whether represented by par-value stock or no-par-value stock. The Illinois tax is based on authorized capital stock, and the issue here presented was not involved in the New York case. To impose the

Illinois tax there must be a basis for valuing all authorized stock, whether issued or unissued, whether of par value or of no par value. The New York case in no way presented an issue regarding authorized stock whose value may have been subject to future determination.

We do not find that the basis for computing the franchise tax on no-par-value stock impairs the obligation of contracts, deprives of property without due process of law or denies the equal protection of the laws.

The judgment is affirmed.    *Judgment affirmed.*

Mr. JUSTICE THOMPSON, dissenting:

The construction given the general Corporation act by the decision of the court nullifies many of its provisions. By holding that the "amount of authorized capital stock" need not be stated in dollars it ignores the plain language of the statute and opens the door to fraud.

Section 4 of the act requires that the statement of incorporation set forth, among other things: "(8) The total amount of authorized capital stock;" "(6) the number of shares into which the capital stock is to be divided, whether all or part of the same shall have a par value, and if so, the par value thereof, which shall not be less than $5, nor more than $100, per share, and whether all or part of the same shall have no par value;" "(9) the amount of such stock which it is proposed to issue at once (which shall not be less than $1000, all of which must be subscribed);" and "(10) the payment of at least one-half of the capital stock, which it is proposed to issue at once."

The term "capital stock," properly speaking, signifies the amount fixed by the corporate charter to be subscribed and paid in by the shareholders of a corporation. It is the property of the corporation contributed by its shareholders to the extent required by its charter. While the capital or assets of a corporation may be increased by accumulation of profits or enhancement in the value of property or

reduced by losses or decrease in values, the amount of the capital stock remains fixed unless it is increased or reduced by or under legislative authority. (*Armstrong* v. *Emmerson*, 300 Ill. 54.) "The amount of authorized capital stock means the total sum of money necessary to be paid into the treasury of the corporation to secure the issuance of the total number of shares of stock authorized by the articles of incorporation." (*People* v. *Emmerson*, 305 Ill. 348.) This is true whether the shares issued state a par value or state no par value. The capital stock is divided into a certain number of shares, each share being the interest the owner or stockholder has in the management of the corporation and in its surplus profits, and, on a dissolution, in all its assets remaining after the payment of its debts. The corporation issues to each stockholder a stock certificate, which is a written acknowledgment of the interest of the stockholder in the corporate property. This certificate of stock is not the stock itself. It is mere evidence of the holder's ownership of the stock and of his rights as a stockholder to the extent specified therein. (5 Fletcher's Cyc. Corp. sec. 3425.) If the stock has a stated par value that par value must be expressed in the certificate, but if the stock is of that variety known as stock having no par value, then the dollar-mark does not appear upon the certificate. In either event the stock has, in fact, a par value,—*i. e.*, a value equal to the fractional part of the authorized whole represented by it. In the one variety it is expressed on the certificate; in the other it is not. Whatever the character of the certificate issued, each share represents an aliquot part of the total assets of the corporation, regardless of what its nominal or its actual value may be. Rarely, if ever, is the actual value of a share of stock the same as its nominal value. Practical experience shows that it is impossible to maintain a constant equilibrium between the nominal capital of a corporation and its assets. The par value of a share of stock, whatever the character of the certificate

issued to the shareholder, is the fractional part of the share capital, represented by a particular variety of stock, produced by dividing the total amount authorized by the number of shares into which such variety is divided. For example, the par value of the no-par-value stock of appellant is 1/10,000th of $50,000, or $5.

That the act requires the amount of the authorized capital stock to be stated in dollars is evidenced by the fact that the legislature has said that the amount which is proposed to be issued at once shall not be less than $1000. It does not say the minimum may be 200 shares of no-par-value stock. When the legislature fixed the amount it fixed it in dollars. How is the Secretary of State to know when one-half of the amount of capital stock, which it is proposed to issue at once, has been paid, if the amount is not stated in dollars? I know of no way to pay "one-half of the capital stock" except to pay it in dollars or their equivalent. Section 23 makes directors liable for assenting to an indebtedness in excess of the amount paid in on the shares of capital stock of the corporation issued and outstanding and for declaring a dividend which will impair the capital. Section 28 requires at least one-half of the amount of an increase in capital stock which is issued, to be paid in before the new stock is issued. If the increase in capital stock is merely a certain number of shares of stock of no par value without the amount of the increase being stated in dollars, when is one-half of the amount of the new issue paid into the treasury of the corporation and when does the new issue become lawful? Section 53 makes each stockholder liable to creditors to the extent of any unpaid portion of the shares issued to him. If shares may be issued by the corporation without regard to their par value, how is the "unpaid portion" to be determined? These sections, and many more, are a nullity unless the amount of the capital stock of a corporation must be stated in dollars.

Whether the shares of stock have a stated par value or have no par value stated, the corporation cannot issue the stock for less than par.  In order to secure the issue of all the shares of stock there must be paid into the treasury of the corporation, in cash or its equivalent, the total amount of its authorized capital stock.  Under section 32 the corporation is authorized to sell its shares of stock having no par value for such consideration, not less than $5 nor more than $100 a share, as may be prescribed in the certificate of incorporation or as from time to time may be fixed by the board of directors pursuant to authority conferred in its certificate, but the price fixed could under no circumstances be less than par.  If the total amount of authorized capital stock of a corporation be $10,000, divided into 1000 shares of no par value, the minimum price for each share must be $10.  The board of directors may likewise fix the price at which par-value shares may be sold by the corporation so long as it does not sell them for less than par.  Section 30 requires each certificate for shares of capital stock to have stamped or printed on it the amount actually received by the corporation for the shares represented by it.  There is nothing in the act to indicate that the legislature meant to exempt from these general sections, corporations issuing shares stating no par value.

Section 1 of article 9 of the constitution gives the General Assembly power to tax corporations owning or using franchises and privileges in such manner as it shall from time to time direct by general law, uniform as to the class upon which it operates.  The legislature may classify corporations for taxation, (*Coal Run Coal Co.* v. *Finlen,* 124 Ill. 666,) but the classification must have some reasonable relation to the end proposed by the particular legislation. (*Springfield Gas Co.* v. *City of Springfield,* 292 Ill. 236; *Commonwealth* v. *Alden Coal Co.* 251 Pa. 134, 96 Atl. 246; *State* v. *Minnesota Farmers' Mutual Ins. Co.* (Minn.) 176 N. W. 756; *Hayes* v. *Smith,* (Mont.) 192 Pac. 615.) Cor-

porations may be classified as banking, railroad, mining, insurance and manufacturing, because each of these classes has characteristics which differentiate it in important particulars from the others. But there is no reasonable basis for placing corporations issuing their stock with a par value in a class different from those corporations issuing no-par-value stock. Take, for instance, two companies manufacturing the same article by the same process and each of which has an authorized capital stock of $100,000 divided into 20,000 shares. What possible difference can it make if one of these corporations issues certificates stating a par value of $5 while the other issues certificates which state no par value? The actual par value of the shares in both corporations is exactly the same, and so, also, is the liability of the directors and the stockholders to creditors and the rights of the shareholders to participate in the business of the corporation. But under the amendment added in 1923 to section 105 the corporation issuing certificates expressing no par value must pay an annual franchise tax twenty times as large as the corporation issuing certificates expressing a par value. This is a discrimination which finds no basis in authority or in reason. Whether stock be par value or no par value, it merely represents the proportionate interest of the holder in the corporate assets, (8 Thompson on Corp.—2d ed.—sec. 3447a,) and the burdens of taxation must fall equally upon all corporations of a given character without regard to whether their stock is of the one kind or the other. The amendment is unconstitutional and void.

Mr. JUSTICE DEYOUNG took no part in this decision.