ROBERTS & SCHAEFER COMPANY *v.* EMMERSON, SECRETARY OF STATE OF ILLINOIS.

ERROR TO THE SUPREME COURT OF THE STATE OF ILLINOIS.

No. 210. Argued March 12, 1926.—Decided April 12, 1926.

1. *Quaere:* Whether, as between its domestic corporations, a State may not constitutionally measure their franchise taxes by the amounts of their authorized capital stock without regard to the amounts issued? *Air-Way Corp.* v. *Day,* 266 U. S. 71, distinguished. P. 53.

2. A corporation is not in a position to raise this question under the equal protection clause of the Fourteenth Amendment, if all of its authorized capital stock has been issued. P. 54.

3. As applied to domestic corporations doing only intrastate business, a state franchise tax measured by a flat rate on authorized capital stock, adopting the par value for par-value stock and $100 per share for no-par stock, is not such a discrimination as infringes the equal protection clause of the Fourteenth Amendment, either (1) as between corporations whose authorized no-par shares may be of like number but represent very different capital values, or (2) as between corporations with par-value stock and corporations with no-par value stock. Pp. 55, 57.

So *held* where the law permitted par value shares to be issued only for money or property equivalent to the par value, but no-par value stock for money or property of any value not less than $5 nor more than $100 per share. Ills. Rev. Stats. 1925, c. 32, as amended by Ls. 1921, p. 365; 1923, p. 280.

4. The fact that a corporation issued no-par stock when the law valued it at a lower figure for the purpose of measuring the cor-

poration's franchise tax, did not give rise to a contractual obligation preventing the State from adopting a higher valuation, increasing the tax. P. 58.

5. If the Illinois corporate franchise tax law may be deemed part of a corporation's charter, it may nevertheless be amended under the power reserved by § 146 of the Illinois General Corporation Act. *Id.*

313 Ill. 137, affirmed.

ERROR to a judgment of the Supreme Court of Illinois which affirmed a judgment dismissing the bill in a suit by a corporation for a mandatory injunction to compel the Illinois Secretary of State to accept a sum specified, as the plaintiff's annual franchise tax.

*Mr. Paul O'Donnell,* with whom *Mr. Charles W. Paltzer* was on the brief, for plaintiff in error.

*Mr. Bayard Lacey Catron,* with whom *Messrs. Oscar E. Carlstrom* and *Albert D. Rodenburg* were on the brief, for defendant in error.

MR. JUSTICE STONE delivered the opinion of the Court.

The plaintiff in error, a corporation organized under the laws of Illinois, and doing business in that State, filed its bill in the Circuit Court of Sangamon county, Illinois, for a mandatory injunction to compel the defendant in error, as Secretary of State for Illinois, to accept the sum of $75.00 in full discharge of its liability for an annual franchise tax for the year 1923, imposed by § 105 of the Illinois Corporation Act, and to enjoin the defendant in error from collecting more than that amount.

The plaintiff corporation was originally organized with an authorized capital stock of $100,000, divided into one thousand shares of the par value of $100. In 1921, the Illinois Corporation Act was amended so as to allow corporations to issue shares of no par value. Ill. Rev. Stats., (Cahill, 1925) c. 32, § 32, as amended by Act of June 11, 1921, Laws of 1921, p. 365. Shortly after the passage

of this Act, the corporation, by amendment of its charter, converted its outstanding stock into preferred stock, and authorized and issued forthwith, 10,000 shares of common stock of no par value.

Section 105 of the Corporation Act then provided:

" Each corporation for profit . . . organized under the laws of this State or admitted to do business in this State, and required by this Act to make an annual report, shall pay an annual license fee or franchise tax to the Secretary of State of five cents on each one hundred dollars of the proportion of its capital stock, authorized by its charter in the office of the Secretary of State, represented by business transacted and property located in this State. . . ."

The Secretary of State demanded of the plaintiff corporation, under this statute, the payment of five cents on each share of no-par stock, on the assumption that for the purpose of the tax, no-par shares were to be valued at $100. The plaintiff took the position that there was no statutory authority for the assessment of the tax on that basis, and that, since its no-par value shares had been issued as " fully paid up and non-assessable upon the payment of five dollars for each share in cash or property," it was liable to a tax only on the basis of that valuation; and tendered the tax so computed to the Secretary of State. In a mandamus proceeding brought by the plaintiff corporation, the Supreme Court of Illinois upheld this contention and ordered the Secretary of State to accept the lesser sum in satisfaction of the tax. *People ex rel. Roberts & Schaefer Co.* v. *Emmerson,* 305 Ill. 348.

After this decision, the legislature of Illinois amended § 105 (Laws 1923, p. 280) by adding the sentence:

" In the event that the corporation has stock of no par value, its shares, for the purpose of fixing such fee, shall be considered to be of the par value of $100 per share."

The plaintiff's bill in the case before us attacks the validity of the franchise tax imposed on it pursuant to this amendment, on the ground that the amendment is unconstitutional. The circuit court dismissed the bill for want of equity. On appeal, the Supreme Court of Illinois affirmed the judgment (313 Ill. 137), holding that the tax was lawfully assessed. The plaintiff comes here on writ of error. Jud. Code § 237.

It is urged that the selection of authorized capital stock as the basis for the franchise tax or license fee is arbitrary and has no tendency to produce equality, and results in imposing different rates of taxation on corporations having the same issued capital stock, holding the same amount of property and doing the same amount of business, whenever they have different amounts of authorized capital stock; that the mere number of authorized no-par value shares, regardless of their value or the amount of money or property for which they are or may be issued, is not a reasonable basis for a franchise tax, but is wholly arbitrary; that the provision of § 105 assigning an arbitrary valuation of $100 per share to no-par stock for the purpose of computing the tax in question, results in a discrimination against corporations which issue shares of no par value, and in favor of those which issue them at a par value. Reliance is also placed on the invalidity of the amendment as impairing the obligation of contract (Constitution, Art. 1, § 10) in that the shares of the plaintiff were issued before the amendment of § 105, and at a time when, it is alleged, the law of Illinois provided that, for the purpose of this tax, no-par stock was to be valued at the amount for which it was actually issued.

In support of the argument that authorized capital stock is not a permissible basis for a franchise tax, the plaintiff relies on *Air-Way Electric Appliance Corp.* v. *Day*, 266 U. S. 71. That case dealt with a privilege tax,

laid by Ohio on a foreign corporation engaged in interstate and intrastate commerce in that and other States. It was held that a tax on such a corporation for the privilege of doing business in Ohio, where the tax was measured by that proportion of its total authorized capital stock which its business done and property owned in Ohio bore to its total business done and property owned everywhere, was invalid as an unconstitutional burden on interstate commerce, and a denial of the equal protection of the laws. While one factor in the computation of the tax was properly the proportion of the corporation's business done and property owned within the State, the other factor was the amount of its authorized capital stock, only a part of which had actually been issued. The authority to issue its capital stock was a privilege conferred by another State and bore no relation to any franchise granted to it by the State of Ohio or to its business and property within that State. When authorized capital stock is taken as the basis of the tax, variations in the amount of the tax are obtained, according as the corporation has a large or small amount of unissued capital stock. This was held, in the *Air-Way Case*, to be an unconstitutional discrimination, since it resulted in a tax larger than the tax imposed on other corporations with like privileges and like business and property within the State, but with a smaller capital authorized under the laws of the State of their creation.

In the present case, the plaintiff corporation is organized and does all its business in Illinois. We cannot say that a State may not impose a franchise tax on a domestic corporation, measured by its authorized capital stock. See *Kansas City Ry.* v. *Kansas*, 240 U. S. 227, 232–3; *Kansas City* v. *Stiles*, 242 U. S. 111.

But the plaintiff is not in a position to raise this question. As this Court has often held, one who challenges the validity of state taxation on the ground that it vio-

lates the equal protection clause, cannot rely on theoretical inequalities, or such as do not affect him, but must show that he is himself affected unfavorably by the discrimination of which he complains. See *Western Union Tel. Co.* v. *Massachusetts,* 125 U. S. 530, 552–3; *Gast Realty Co.* v. *Schneider Granite Co.,* 240 U. S. 55, 60; *Withnell* v. *Ruecking Constr. Co.,* 249 U. S. 63; *Underwood Typewriter Co.* v. *Chamberlain,* 254 U. S. 113, 121. The plaintiff cannot complain that the tax is measured by authorized, instead of issued, capital stock, because all of its authorized capital stock has been issued. Any discrimination that exists operates, therefore, in plaintiff's favor.

It is argued that the tax imposed is a tax at a flat rate per share on no-par value stock, regardless of its value, so that different corporations are taxed at different amounts although their no-par stock was issued for the same total amount of capital; and that the tax is based upon an unreasonable and discriminatory classification in which no-par value stock is placed in one class and taxed at an arbitrary valuation of $100 per share, while par value stock is placed in another class and taxed at the value at which it is authorized to be issued. Both arguments leave out of account the nature of the tax and the essential differences between the two classes of stock.

The tax is imposed as a franchise tax upon a domestic corporation doing business only within the State. Its power to issue shares of both classes is derived from the laws of Illinois. The amount which may be issued; the manner of issue; the liability of holders of these shares and all other incidents of them, are regulated by the law of that State. The tax is not a property tax imposed on shares of stock or on the assets of the corporation. It is a tax on the corporate franchise, which includes the privilege, whether exercised or not, of issuing

and using when issued, a particular kind of stock known as "no-par value stock." As the stock may, under the statute, be issued for as much as $100 a share, if the company so chooses, the statute fixes the maximum extent to which the privilege may be exercised as the basis for computing the tax.

Neither this privilege nor the corresponding privilege of issuing par value stock bears any necessary relation to the value of the stock or the assets of the corporation; and the tax is imposed whether or not the stock is issued and without regard to the value of the stock or of the corporate property. We cannot say that the value of the corporation's franchise may not be measured by the number of no-par shares which may be issued rather than their value when issued. The only question with which we need be concerned is whether there are such differences between the two privileges to issue the two classes of stock, as to constitute a proper basis for classification for purposes of taxation, so that the amount of the tax in the one case may be based on the issue price of the stock, and in the other upon the maximum price at which it may be issued, regardless of the price at which it actually is issued.

That there are differences of practical importance between the two classes of stock and the privileges of issuing and using them is sufficiently evidenced by the very general adoption of legislation authorizing the issue of no-par value stock, and by the widespread practice of issuing that type of corporate shares.

The nature of the more important of these differences sufficiently appears from the provisions of the Illinois statute as interpreted and applied in the opinion below in the Supreme Court of Illinois. Par value stock may be issued only for money or property equivalent to the par value. No-par value stock may be issued for money or property of any amount or value provided it is not less

than $5.00 nor more than $100 per share. From this it follows that all the par value stock of an authorized class must be issued, if issued at all, at a uniform value or price, while no-par value stock may be issued from time to time at different prices or values, although the holders of all these shares are entitled to share equally in the distribution of profits of the corporation. The liability of stockholders of the two classes of stock for the debts of the corporation may be different, and greater facility is permitted in the issuance and marketing of no-par value shares than in the case of stock having a par value.

These differences, both in the legal incidents and in the practical uses of the two classes of stock, not only are a basis for classification of them for purposes of taxation, but make unavoidable certain differences in the method of assessing this tax. Authorized capital stock cannot well be used as the measure of a tax unless some arbitrary value is assigned to the no-par shares; for they may be issued from time to time at varying prices, and until issued, they cannot have any value. To require the stock to be issued at a value fixed in advance of its issue, and to make that value the basis of the tax, would in effect abolish no-par stock. Because of the essential differences between the two kinds of stock, it is difficult to conceive of any other method of assessing the tax which would save the character of no-par value stock and not result in similar inequalities.

The inequalities complained of result from a classification which, being founded upon real differences, is not unreasonable, and the discrimination which results from it is not arbitrary or prohibited by the Fourteenth Amendment. It is enough that the classification is reasonably founded upon or related to some permissible policy of taxation. *Watson* v. *State Comptroller,* 254 U. S. 122; *Pacific Express Co.* v. *Seibert,* 142 U. S. 339; *American Sugar Refining Co.* v. *Louisiana,* 179 U. S. 89; *Clement National Bank* v. *Vermont,* 231 U. S. 120, 135–7.

Only brief consideration need be given to the contention that the amendment of § 105 of the Illinois Corporation Act impairs the obligation of contract. That plaintiff's stock when issued was not subject to the tax computed at the rate of $100 per share, which was later authorized by § 105 as amended, was decided in *Roberts & Schaefer Co. v. Emmerson*, 305 Ill. 348. The fact that the corporation issued its stock under statutes which were later so interpreted can give rise to no inference that the State contracted not to increase or otherwise modify the tax. See *Home Ins. Co. v. City Council*, 93 U. S. 116; *Memphis Gas Co. v. Shelby County*, 109 U. S. 398; *Wisconsin & Michigan Ry. v. Powers*, 191 U. S. 379; *Seaton Hall College v. South Orange*, 242 U. S. 100.

Even if the taxing statute be deemed to be a part of its corporate charter, it was nevertheless subject to the provisions of § 146 of the Illinois General Corporation Act reserving to the legislature the power " to amend, repeal or modify this act at pleasure."

Judgment of the Supreme Court of Illinois is

*Affirmed.*