George W. DOUD, Donald Q. McDonald, and J. Wesley Carlson, doing business as Bondified Systems, and Eugene Derrick, Plaintiffs,

v.

Orville HODGE, Auditor of Public Accounts of the State of Illinois, Latham Castle, Attorney General of the State of Illinois, and John Gutknecht, State's Attorney of Cook County, Illinois, Defendants.

Civ. A. No. 53 C 2322.

United States District Court, N. D. Illinois, E. D.

Feb. 4, 1955.

854

John J. Yowell, Leonard Bosgraf, Harold B. MacKenzie, Chicago, Ill., for plaintiffs.

Latham Castle, Atty. Gen. of Illinois, John Gutknecht, State's Atty. of Cook County, Ill., Chicago, Ill., for defendants. William C. Wines, Raymond S. Sarnow, Asst. Attys. Gen. of Illinois, Clarence W. Beatty, Jr., Asst. State's Atty. of Cook County, Ill., Chicago, Ill., of counsel.

Hirsch E. Soble, Chicago, Ill., amicus curiae.

SCHNACKENBERG, Circuit Judge, and HOFFMAN and LA BUY, District Judges.

SCHNACKENBERG, Circuit Judge.

Plaintiffs, George W. Doud, Donald Q. McDonald and J. Wesley Carlson, as a partnership, and plaintiff, Eugene Derrick, agent of said partnership, by their amended complaint seek an injunction restraining the defendants, who are the Auditor of Public Accounts and the Attorney General of the State of Illinois, and the State's Attorney of Cook County, Illinois, from enforcing against said plaintiffs the provisions of the Illinois Community Currency Exchange Act,[1] upon the ground that said Act is unconstitutional in that, according to plaintiffs, it denies them the equal protection of the law in violation of Section 1 of the Fourteenth Amendment to the Constitution of the United States.

Defendants filed answers and evidence was adduced by the respective parties.

An amicus curiae makes the contention (which has been adopted by the defendants) that this court has no jurisdiction to decide the question of constitutionality raised by plaintiffs because that question has never been presented to the Illinois Supreme Court, and hence the federal courts are without jurisdiction to determine it in the first instance, citing Spector Motor Co. v. McLaughlin, 323 U.S. 101, at page 104, 65 S.Ct. 152, 89 L.Ed. 101, and Alabama State Federation of Labor v. McAdory, 325 U.S. 450, at page 471, 65 S.Ct. 1384, 89 L.Ed. 1725.

The amended complaint alleges that the partnership is organized for the purpose of, intends to engage, and has been engaging, not in the ordinary business of a currency exchange, but exclusively in the business of selling and issuing money orders under the firm name "Bondified Systems" in the Counties of DuPage and Cook and other portions of the State of Illinois. That business is to be conducted through agents, who are principally persons engaged in operating retail drug, hardware and grocery stores.

It is also alleged by plaintiffs, and proved by the evidence, that on August 11, 1953, they appointed the plaintiff Derrick (who conducts a drug store) as their agent for the sale to the public of postcard checks and money orders issued by the partnership firm.

Section 1 of the Act[2] provides in part:

"§ 1. For the purposes of this Act: 'Community currency exchange' means any person, firm, association, partnership or corporation, except banks incorporated under the laws of this State and National Banks organized pursuant to the laws of the United States, engaged at a fixed and permanent place of business, in the business or service of, and providing facilities for, cashing checks, drafts, money orders or any other evidences

1. Secs. 30 to 56.3 inclusive, Chap. 16½, Ill.Rev.Stats.1953.

2. Sec. 31, Chap. 16½, ibid.

of money acceptable to such community currency exchange, for a fee or service charge or other consideration, or engaged in the business of selling or issuing money orders under his or their or its name, or any other money orders (other than United States Post Office money orders, American Express Company money order, Postal Telegraph Company money orders, or Western Union Telegraph Company money orders), or engaged in both such businesses, or engaged in performing any one or more of the foregoing services."

Section 8 of said Act[3] provides in part:

"§ 8. A community * * * currency exchange shall not be conducted as a department of another business. It must be an entity, financed and conducted as a separate business unit. * * *"

Plaintiffs contend that the exemption of those engaged in the business of selling or issuing American Express Company money orders is "wholly unwarranted" and is "highly discriminatory."

Plaintiffs also contend that "the arbitrary, discriminatory character of" the Act "as applied to plaintiffs * * * engaged exclusively in the business of selling and issuing money orders is further illustrated by the exemption from said statute of sale of American Express Company money orders by persons, firms, and corporations whose principal business consists in the operation of retail drug, hardware and grocery stores." This contention means briefly that plaintiffs' agent cannot sell and issue money orders as an adjunct to his drug store business while an agent of American Express, its direct competitor, can do just that.

The admissions in the pleadings establish that American Express Company is an aggregation of individuals operating under a joint stock company plan. It is not a corporation. It sells and issues money orders in the City of Chicago, Illinois, through operators of drug and grocery stores. It does not operate under any franchise granted by the State of Illinois and is not subject to regulation by any regulatory body thereof.

It thus appears that plaintiffs intend to engage in only one phase of the activities in which a community currency exchange may engage if licenced under the Act in question; that is, the business of selling or issuing money orders under their name. It also appears that American Express Company, which is exempt from the operation of the Act, is engaging in the same activity. It further appears that plaintiffs intend to, and American Express Company does, engage in this business through agents operating retail stores of the same types.

Plaintiffs argue that "it is the function and duty of this court to determine whether or not the Act in question violates the Fourteenth Amendment as applied to these plaintiffs."

On the other hand the amicus curiae and the defendants argue that it is not the function and duty of this court to determine that question unless and until plaintiffs secure an answer to that question from the Illinois Supreme Court.

It would seem that a plausible argument could be made, on behalf of plaintiffs, to the Illinois Supreme Court, predicated upon the fact that the identical similarity of the business conducted by American Express Company, which is exempt from regulation under the Act, and that in which plaintiffs intend to engage and which on its face the Act says must be regulated by the State, is an arbitrary discrimination. If this argument were made to and accepted as valid by the Illinois Supreme Court, it might well grant to plaintiffs the very relief which they are seeking in this court and hence a suit of this character would be unnecessary. A three-judge court, in a case involving a similar

---

3. Sec. 38, Chap. 16½, ibid.

situation arising under the Community Currency Exchange Act of the State of Wisconsin, held that the exemption of American Express Company rendered the statute discriminatory and unconstitutional as applied to the plaintiff in that case. Currency Services, Inc., v. Matthews, D.C.W.D.Wis.1950, 90 F.Supp. 40, at pages 43, 45. However, there no question was raised as to the federal court's jurisdiction, such as the question which now confronts us.

Whether in plaintiffs' situation the Illinois Supreme Court would hold the exemption of American Express Company from the application of the Act constitutional or unconstitutional we do not know. Not having that prescience and being unwilling to guess as to how the Illinois court would decide this question when and if it were presented to it, we have no jurisdiction to make that decision ourselves. Hence we cannot decide the constitutional question presented in the absence of such authoritative determination by the Illinois Supreme Court.

Plaintiffs seem to argue that in McDougall v. Lueder, 1945, 389 Ill. 141, 58 N.E.2d 899, 156 A.L.R. 1059, the Illinois Supreme Court has already, in effect, decided that the Illinois Act, as to plaintiffs, does not violate the equal protection of the law provision of the federal constitution, and, accordingly, this court should grant appropriate relief, and that no further state court decision is necessary. In so urging, plaintiffs overlook the plain distinction between the business of the plaintiffs in the McDougall case and the business in which they (plaintiffs herein) intend to engage. That distinction plaintiffs themselves have made and emphasized. The McDougall plaintiffs were engaged in the general broad activities of a currency exchange, as distinguished from the limited activities in which plaintiffs herein intend to engage. As we have seen, American Express Company operates only that part of a general currency business which is limited to the issuing and selling of money orders. It does

it, without a license issued under the Act, within the same limits plaintiffs wish to operate without being licensed. The Illinois Supreme Court might find that to deny plaintiffs that right would be to deprive them of the same protection which American Express Company enjoys under the law. It well may be that the Illinois Supreme Court would hold the exemption of American Express Company unconstitutional as applied to persons in the position of these plaintiffs and at the same time adhere to its holding that the exemption is constitutional as applied to persons in the position of the McDougall plaintiffs. See: Roberts & Schaefer Co. v. Emmerson, 271 U.S. 50, at page 54, 46 S.Ct. 375, 70 L.Ed. 827, affirming 313 Ill. 137, 144 N.E. 818. The federal courts, before passing on the question urged by the present plaintiffs, must wait until the Illinois Supreme Court has spoken in answer to that same question.

It is therefore necessary that the amended complaint be dismissed for want of jurisdiction. Counsel for defendants will present an order accordingly within five days.

HOFFMAN, District Judge (dissenting):

I am aware of no decision in which the Supreme Court of the United States has held that a federal district court must, or even should, refuse to entertain a suit under the circumstances present here. The jurisdiction of this court is properly invoked. The plaintiffs, supported by the decision of another three-judge court in Currency Services, Inc., v. Matthews, D.C.W.D.Wis.1950, 90 F. Supp. 40, have raised a substantial federal constitutional question. The application of the challenged statute to the plaintiffs is unquestioned, and the Supreme Court of Illinois has already upheld the exemption of American Express Company without suggesting that its decision in any way rested on the nature of the activities of the plaintiffs in the decided case [McDougall v. Lueder, 1945, 389 Ill. 141, 58 N.E.2d 899, 156 A.L.R.

1059]. The balance between state-federal relations is not so delicate that it would be upset by this court's consideration of the merits of the plaintiffs' claim that the Illinois Currency Exchange Act has deprived them of the equal protection of the laws.

I would grant the prayer of the plaintiffs' amended complaint.