# THE STATE ex rel. CHARLES J. LEPPERT et al. v. CORNELIUS ROACH, Secretary of State.

### In Banc, December 22, 1915.

1. **CORPORATION: Incorporation Tax: Distinction Between Capital and Capital Stock.** In determining the amount of money which a corporation must pay to the Secretary of State for its certificate of incorporation, it is not material to accurately define, and distinguish the difference in meaning of, "capital" and "capital stock." The amount of money required by law to be paid into the corporation's treasury in money or money's worth for the prosecution of its business when organized, may not improperly be termed its capital stock, but it also constitutes its assets or capital, because it is its actual and only property.

2. ————: ————: **A Tax and Not Fees.** The money required to be paid by incorporators as a prerequisite to the issuance of the articles of incorporation is not a fee for clerical services to be rendered by the Secretary of State, but is a tax levied by the State on a corporation at its creation, for revenue purposes. And being a tax they must pay in proportion to the true value of its actual assets taken as capital stock, whatever be the proposed capitalization—the ruling, however, not being applicable to business companies incorporated in pursuance to statute upon the payment into the corporate treasury of fifty per cent of their authorized capital stock.

3. ————: ————: ————: **Title of Constitution Article.** The title of an article of the Constitution in which a certain section is found is, in a legal sense, no part of said section and cannot be used to amplify or restrain its meaning; but it may be properly considered in determining the purpose of the framers of the instrument in classifying the section—under the general rule that a title is presumed to express the intent of a law unless plainly contradicted by its body. And, hence, the fact that the section of the Constitution providing that no business corporation shall be created unless the persons named as corporators shall, at or before the filing of the articles of association, pay into the State Treasury, the fees therein specified, is found in the article entitled, "Revenue and Taxation," authorizes the conclusion that the title indicates the nature of that payment to be that of a tax, and not a mere fee for clerical services.

4. ———: ———: **Amount.** Where the affidavit of the incorporators attached to the articles of association states that the true value of the money and property to be taken in payment of the capital stock of the corporation is $91,000, the incorporators must pay an incorporation tax on that sum, and cannot satisfy the demands of the law by applying for the formation of a corporation with an authorized capital stock of $50,000 and tendering a fee based on a capitalization of $50,000.

*Held,* by WOODSON, C. J., dissenting, that the incorporators of a business corporation may arbitrarily capitalize their company for any amount they deem proper, within the limits prescribed by the statutes; that the board of directors may declare dividends out of any surplus money the corporation may have on hand over and above its capitalization, including money contributed by its stockholders after the incorporation has been effected; that the mere fact that the corporators, at the time of applying for incorporation, announced their intention to use in the business of the company any more money or property than that represented by its capitalization would not change the legal status of the company, capitalization or shares of stock, nor would the fact that such an announcement was contained in the application for the charter; and that the announcement in the articles that they intended to use $41,000 worth of property over and above the capitalization in the business of the company, was wholly voluntary, constituted it no part of the capitalization, and did not authorize the Secretary of State to assess an incorporation tax thereon.

5. ———: ———: ———: **Surplus.** A ruling requiring a company to incorporate for the true value of its property taken as capital stock as shown by the articles of agreement will not prevent it from accumulating a surplus. After a company is incorporated, the State does not concern itself with the manner in which it conducts its business, whether successfully or otherwise, provided it complies with the law.

## Mandamus.

WRIT QUASHED.

*Leahy, Saunders & Barth* and *David W. Voyles* for relators.

(1) This is a mandamus proceeding to compel the Secretary of State, respondent herein, to accept articles of incorporation showing on their face an itemized

list of property, amounting to $91,084.56, whereas the capital stock is fixed at $50,000. Respondent insists that the capital stock of the proposed corporation, Leppert-Roos Fur Company, must equal the amount of its assets, and that the company cannot be incorporated with a surplus. (2) The relators have the right, under the laws of this State, to fix the capital stock of the corporation which they have associated to organize, at any sum agreed upon by them, within the maximum and minimum limits, provided by law. R. S. 1909, sec. 3354, as amended by Laws 1911, p. 148. (3) The practical administrative policy followed in this State for many years to incorporate companies with a surplus, uniformly acquiesced in heretofore, is of persuasive force and opposed to any construction of the statutes which would impute to the General Assembly an intention to prohibit the organization of corporations with a surplus. Timmonds v. Kennish, 240 Mo. 328; Folk v. St. Louis, 250 Mo. 141; Ewing v. Vernon County, 216 Mo. 689; Westerman v. Supreme Lodge, 196 Mo. 709; State ex rel. v. Reichmann, 239 Mo. 95; Ross v. Railway, 111 Mo. 25. (4) The purpose of the Act of 1911, Laws 1911, pp. 148-149, enacting a new section in lieu of Sec. 3339, R. S. 1909, requiring a disclosure of the value of the property transferred for the payment of capital stock, is for the protection of the stockholders and those who might deal with the corporation by preventing an overissue of such stock. The act was borrowed from Massachusetts. 2 Revised Laws Mass., chap. 110, 1902; Bank v. Hingham Mfg. Co., 127 Mass. 563; Elevator Co. v. Tow Boat Co., 152 Mass. 431. (5) The logical consequence of the proposition that incorporators are not permitted to so fix the amount of capital stock, in reference to the total assets of the company as to leave a surplus, is that, after a corporation has once been formed, no surplus can be accumulated for a period longer than would be necessary to convert it into cap-

ital stock or to distribute it in dividends; and this is contrary to a later express statutory enactment in this State as to certain classes of corporations. Laws 1915, p. 159, sec. 116; Laws 1913, p. 168, sec. 5. (6) (a) Our constitutional provision and subsequent statutory enactments based thereon, providing for payment into the treasury of fees upon incorporation, based on the issue of stock or subsequent increase thereof, is merely a requirement for payment to the State of a special form of compensation for the granting of the corporate franchise, and is not primarily a revenue measure, the taxation of corporations being provided for in other ways. 2 Tiedeman, State and Federal Control of Persons and Property, p. 953; Constitution, art. 10, sec. 21; R. S. 1909, secs. 2376, 11357 and 11552. (b) The use of the term "capital stock" in the Constitution and in the statutes relating to license fees requiring payment into the State Treasury of fees upon incorporation, cannot afford any basis upon which such provision could be construed to mean that like fees are required to be paid upon the capital of such corporation, as a wide distinction exists between the terms "capital stock" and "capital." The former is the sum fixed by the corporate charter as the amount paid in, or to be paid in, by the stockholders; while the latter is the actual property of the corporation constantly increasing or diminishing in value. 1 Cook on Corporations (7 Ed.), sec. 8; 6 Cyc. 347; Abbott's Dictionary of Terms and Phrases, used in American and English Jurisprudence (1879), "Capital Stock;" Bouvier's Law Dictionary, "Capital," "Capital Stock;" Wells v. Green Bay Co., 90 Wis. 442; Thompson on Corporations (2 Ed.), sec. 3408; R. S. 1909, sec. 11519; Railroad v. Shacklett, 30 Mo. 550; State v. Railroad, 37 Mo. 267; St. Joseph v. Railroad, 39 Mo. 478; State ex rel. v. Brinkop, 238 Mo. 312. (c) A resume of the constitutional and statutory provisions in Missouri, from 1820 to date, conclusively establishes that the

distinction between "capital" and "capital stock" has always been maintained in this State.    (d) Section 3348, R. S. 1909, governs the declaration of dividends of manufacturing and business corporations and makes the directors jointly and severally liable for the payment of dividends when the company is insolvent. Since directors are penalized for the illegal payment of dividends, their discretion as to creating a surplus should not be taken from them.   Shields v. Hobart, 172 Mo. 517; McLaren v. Planing Mills Co., 117 Mo. App. 40; Laws 1915, sec. 60, p. 130, sec. 121, p. 163, also secs. 116 and 171, pp. 159 and 193.

*John T. Barker,* Attorney-General, *S. P. Howell* and *Lee B. Ewing,* Assistant Attorneys-General, for respondent; *Kenneth Sears* of counsel.

(1)   That prior to the Act of 1911, corporations were permitted to file their articles and receive a certificate of incorporation from the Secretary of State with a "capital stock" less than the actual value of the assets is not decisive or even persuasive on the court under the facts of the case at bar.   Under the act mentioned the Legislature specifically required the incorporators to set out in detail the amount and value of the property set aside for the purpose of paying the "capital stock" in order that the Secretary of State could ascertain and know whether or not the asests exceeded the proposed "capital stock."    Secs. 3339-3341, R. S. 1909; Laws 1911, pp. 148-149; Bank v. Gillespie, 209 Mo. 255.   (2)   Regardless of the purpose of the Act of 1911 the constitutional provision, article 10, section 21, must be given its legitimate effect.   (3) In section 21 of article 10 of the Constitution of Missouri a method is provided by the organic law for the purpose of producing revenue, and not merely, as contended by relator, for the payment of a fee to the Secretary of State for issuing a certificate of incorpo-

ration.  State ex rel. v. Lesueur, 99 Mo. 557; State ex inf. v. Gun Club, 121 Mo. App. 372.  (4)  In the formation of a corporation "capital stock" means the funds of money or property on which and with which the business is to be commenced and carried on; and in revenue statutes the term is often used as synonymous with assets or property.  San Francisco v. Spring Valley Waterworks, 63 Cal. 531; Burrall v. Bushwick, 75 N. Y. 216; People ex rel. v. Ginseng Co., 105 N. Y. App. Div. 178; Railroad v. Shacklett, 30 Mo. 560; State v. Railroad, 37 Mo. 265; St. Joseph v. Railroad, 39 Mo. 478; People v. Morgan, 178 N. Y. 433, 58 L. R. A. 514; State Board of Equalization v. People, 191 Ill. 547; Hubbard v. Bush, 61 Ohio St. 261; Sturgess v. Carter, 114 U. S. 511; Tel. Co. v. Norman, 77 Fed. 22; State v. Duluth Gas & W. Co., 76 Minn. 96, 57 L. R. A. 63; Railroad v. Allen, 15 Fla. 660; Oil Mill Co. v. Decell, 33 So. (Miss.) 412; Foster v. Stevens, 63 Vt. 182; 6 Cyc. 348; 1 Cook's Stockholders & Corporation Law (3 Ed.), sec. 9.

WALKER, J.—This is an original proceeding by mandamus instituted in this court by relators to compel the respondent, who is the Secretary of State, to issue articles authorizing the creation of a business corporation under article 7, chapter 33, Revised Statutes 1909, as amended (Laws 1911, p. 148.)  The application was made for the formation of a corporation with an authorized capital stock of $50,000, and the required fee based on this capitalization was tendered. Under the statute of 1911, supra, when the capital stock of a company applying for incorporation consists of property instead of cash, it is required that the articles of agreement give an itemized description of such property, sworn to by the officers and directors of the proposed company, setting out the cash value of each item thereof; if realty, a specific description of same

is to be given, with the cash value of each tract; if personalty, the location of each class of property is to be given, with its actual value by classes. In the instant case the capital stock, except $1000 in cash, consisted of personalty, which was in the articles of agreement classified and valued as required by the statute. The aggregate valuation of same so set apart and to be employed in the business of the company was more than $91,000. In their affidavit attached to the articles of agreement relators say that the property described is to be taken in payment of the capital stock of said company and that the value placed thereon by them is the actual cash value of such property. Regardless of this showing, relators contend that they are entitled to fix the amount of the capital stock of the proposed corporation arbitrarily at $50,000, which is the maximum amount of capital stock for which the minimum fee may be paid to the State for a charter. Under this state of facts the respondent refused to issue the articles of incorporation, on the ground that the capital stock of the proposed company, as shown by its articles of agreement and as admitted by relators in their affidavit thereto, was $91,000, and the fees required to be paid to the State upon this capitalization should have been tendered to authorize the granting of the charter.

Time need not be taken or words wasted in defining the distinction between the capital and the capital stock of a corporation. The distinctive meanings of these terms, many of which have been compiled by industrious counsel, need not concern us here, because they afford no aid in determining the question under consideration. Whatever differences there may be between their respective meanings are well enough when applied to a going corporation which has accumulated assets, properly termed its capital, but such conditions do not exist here. A company is sought to be incorporated. It is immaterial that the business in

which it proposes to engage was theretofore conducted by relators as individuals. So far as the State is concerned the incorporation of the company is the beginning of its business. The amount required by law to be paid into its treasury by its stockholders in money or money's worth for the prosecution of its business when organized may not improperly be termed its capital stock, but at the same time this constitutes its assets or capital, because it is the actual and only property of the corporation. In fact, as a newly created corporation its full paid capital stock is, in the very nature of its existence, all that it can possess. That is the condition here, and one of the questions to be determined in this case is whether the proposed incorporators are asking incorporation on a capitalization based on the true value of the capital stock as shown by their sworn statement or upon an arbitrary amount less than such true value.

Confronted with this state of facts, it is necessary to determine the nature of the payment required to be made by relators to authorize the respondent in issuing the articles of incorporation, and the manner in which this payment is to be measured. In other words, directing the inquiry to the concrete case, is the payment required to be made by incorporators as a prerequisite to the issuance of the articles of incorporation a fee for clerical services rendered by the Secretary of State; or, is it a tax levied by the State on a corporation at its creation, for revenue purposes? If a fee, the amount for which a corporation may be capitalized may be fixed arbitrarily by the incorporators regardless, as in this case, of the value of the property to be taken as capital stock as set forth in the articles of agreement required to be filed when application is made for the charter, provided, of course, that value is equal to the total amount for which the company is to be incorporated. If, however, the payment required is in the nature of a tax, then the com-

pany must be incorporated for an amount equal to the total cash value of the property to be taken as the capital stock set forth, as before stated, in the articles of agreement. This for the reason that a capitalization for a less amount than the total cash value of the property set forth in the articles of agreement would prevent the levy and collection of the corporation tax upon the full amount of the capital which the company proposed to employ in its business; or, conversely, it would enable the company to escape the payment of a corporation tax upon the value of the property in excess of the amount for which the company was incorporated.

A section of our State Constitution (Sec. 21, art. 10), under the subdivision entitled, "Revenue and Taxation," provides, among other things, that no business corporation shall be created or organized under the laws of this State unless the persons named as corporators shall, at or before the filing of the articles of association or incorporation, pay into the State Treasury the fees therein specified. This is followed by a general proviso that nothing contained in the section shall be construed to prohibit the General Assembly from levying a further tax on the franchises of a corporation.

This section first found lodgment in our laws in the present Constitution, and while held to be self-enforcing (State ex rel. v. Lesueur, 145 Mo. 322), the General Assembly, in 1879 (Sec. 708, R. S. 1879), deemed it proper to enact (Sec. 2976, R. S. 1909), in the words of the Constitution, that portion of the constitutional section regulating the amount to be.paid the State to authorize the issuance of articles of incorporation. This fact, if it have no other pertinence, is indicative of the importance with which the section was regarded by the General Assembly, because the action of the latter was not necessary to render the section operative.

We have shown that the section appears in the Constitution under the title of "Revenue and Taxation." While a title is, in a legal sense, no part of a law and cannot be used to amplify or restrain same, it may properly be considered here in determining the purpose of the framers of the organic law in thus classifying the section, under the general rule that a title is presumed to express the intent of a law unless plainly contradicted by the body of same. [Conn. Mutual Life Ins. Co. v. Albert, 39 Mo. 181; Sedg., Stat. Con., p. 39.] Applying this rule to the concrete case, the conclusion is authorized that the title indicates the nature of the payment required to be that of a tax and not a mere fee for clerical services, and there is nothing in the section which militates against the correctness of this conclusion; besides, it is supported not merely by abstract reasoning, but it has judicial sanction. Note the language employed by this court in discussing this section in State ex rel. v. Lesueur, 99 Mo. l. c. 557:

"Section 21 of article 10 of the Constitution is plain. By it no association can be incorporated for any purpose other than for benevolent, religious, scientific and educational purposes, without the payment of *a tax*. *This tax* . . . is fixed at fifty dollars for the first fifty thousand dollars or less of capital stock and five dollars additional for every additional ten thousand dollars of stock. Now it is plain that the payment of *the tax* cannot be evaded by organizing a corporation under a law which makes no provision for stock. It is equally clear that the Legislature has no power to authorize the evasion of the payment by allowing corporations to be organized under this benevolent law, as it is called, without a capital stock. This court held in express terms in State ex rel. Richey v. McGrath, 95 Mo. 193, that the payment could not be avoided by reason of a legislative declaration that the corporation was one formed for benevolent purposes,

when the law under which it was brought into existence showed that it was a money-making institution."

In the McGrath case, supra, the court designated the payment required to be made by the section under review as *a tax*. In State ex rel. v. Lesueur, 145 Mo. 322, where the consolidation of two railroad companies so as to form one company was under consideration, it was held that to effect this end the payment of the *incorporation tax* prescribed by the section was necessary. In Cement Company v. Gas Company, 255 Mo. l. c. 39, it was held, *arguendo,* that domestic corporations organized for profit must pay a *corporation tax* to the same extent and amount as foreign corporations. From these cases it appears that no doubt has been entertained as to the character of the payment in question and that it has uniformly been regarded as a tax. If it was nothing more than a fee for clerical services it is not reasonable that it would have been regulated in accordance with the amount for which the company was to be incorporated, nor would it have been deemed of sufficient importance to receive constitutional as well as statutory recognition. Finally, it is evident from the proviso to the section that the framers of same regarded the payment therein required as in the nature of a tax, in authorizing the General Assembly "to levy a further franchise tax on business corporations."

From the foregoing it follows that the nature of the payment required to be made to authorize the issuance of articles of incorporation, is a tax. Thus classified, one of the purposes of the Act of 1911, supra, becomes evident, viz., to enable the Secretary of State to determine from the articles of agreement the cash value of the property proposed to be taken as the capital stock. The information thus required to be given by the act is of two-fold importance; one in the protection of the public, that no corporation may be organized in which property is taken as capital stock unless the value of same is equal to the proposed capitalization;

the other in the interest of the State in the exercise of its taxing power, that a corporation may not be organized for a less amount than is shown by the sworn statement of its officers and directors to be the cash value of its property proposed to be taken as the capital stock, which would result in the State being deprived of the corporation tax on the excess of the value of the property above the proposed capitalization. From all of which the conclusion is authorized that the manner of the payment required to be made to the Secretary of State to authorize the issuance of articles of incorporation, is to be regulated by the true value of the property to be taken as capital stock and that this value should fix the basis of the capitalization of the company. This holding is subject to the limitations of section 3339, Revised Statutes 1909, as amended, Laws 1911, p. 148, which provides for the incorporation of business companies upon the payment at the time of their organization of fifty per cent of their authorized capital stock.

There is no merit in the contention of relators that a ruling requiring a company to incorporate for the true value of its property taken as capital stock as shown by the articles of agreement, will result in the prevention of the accumulation of a surplus. After a company is incorporated the State does not concern itself with the manner in which it conducts its business, whether successfully or otherwise, provided it complies with the law.

In view of what has been said the relators' motion for a judgment on the pleadings is overruled, and respondent's demurrer to relator' petition is sustained, which results in the quashing of the preliminary writ issued herein, and it is so ordered.

*Graves, Bond* and *Blair, JJ.,* concur; *Faris, J., dubitante; Woodson, C. J.,* dissents in separate opinion in which *Revelle, J.,* concurs.

WOODSON, C. J. (dissenting).—I understand that the following legal propositions are true and indisputable.

First: That the incorporators of a business corporation may, under the laws of this State, arbitrarily capitalize their company for any amount they deem proper, within the limits prescribed by the statutes; and that the company, after it is incorporated, may, in addition to its capital, use in its business any sum of money its board of directors may fix, whether borrowed money or funds contributed by the stockholders.

Second: That the capital of the company may be paid in money or property, and that the par value of all the stock of the company must correspond in amount to the capitalization of the company so arbitrarily fixed by the incorporators, fully or partially paid, as the case may be.

Third: That the respective shares of the stock of the company cannot be issued for a sum in excess of their par value or face value, nor can the aggregate amount thereof exceed the amount of the capital of the company.

Fourth: That when the capital stock of the company so arbitrarily fixed has been fully paid in money or property, as prescribed by statute, neither the State nor its creditors can compel the company or its stockholders to pay for the use of its business, solvent or insolvent, any sum in excess of the par or face value of its capitalization; if insolvent, of course the State may force a discontinuance of its business or a dissolution of the company, and its creditors may force it into bankruptcy.

Fifth: That the board of directors of any such company may, at the proper time and in the proper manner, pay off and discharge any and all indebtedness the company may owe, and may declare dividends out of all surplus moneys or profits it may have on hand over and above its capitalization, whether earned by

the company as profits or contributed to it by the stockholders after the incorporation has been effected.

Under the foregoing incontestable legal propositions, it seems to me that there is no escape from the conclusion that all contributions or donations made by the stockholders to the company, over and above its capitalization, whether made before or after the incorporation has been perfected, are voluntary acts upon their part, and in no sense constitute a part of the capital of the company, and the company may at any time, in a proper manner, pay all such sums back to the stockholders, and such act would in no sense impair the capitalization of the company, nor do violence to its legal perfection; and neither the State nor the creditors of the company could legally object thereto or prevent such repayment. Of course, if the company should become insolvent before the payment or distribution had been made, then certain equitable and possibly certain legal rights might arise which might prevent the company from paying such sums back to the stockholders; but that is totally foreign to the question in hand, and needs no further consideration.

The fact that the law imposes a certain tax on the capital of a business company at the time of its incorporation can in no manner force the incorporators to increase its capitalization to the amount they desire or intend to use in its business; and it is wholly immaterial whether that intention is announced before or after the company has been incorporated. This must be true for the obvious reason that the incorporators may, under the law, as before stated, arbitrarily fix the amount of the capitalization of the company, and may in addition thereto use in its business any sum its agents and officers may deem proper.

Moreover, as previously stated, the mere fact that the stockholders, at the time of applying for the arti-

cles of incorporation, announced their intention to use in the business of the company more money or property than that represented by its capitalization would not change the legal status of the company, its capitalization, nor share of stock from what they would have been had that announcement been made subsequent to the perfection of the incorporation; nor would the fact that said announcement was made to the Secretary of State in an application for a charter change the situation in the least, for the reason that the law makes no such requirement of the stockholders, nor has the Secretary of State any legal right to require the performance of anything by them which the law does not require. Where it speaks he must speak, but where it is silent he must be silent.

In the case at bar the statement contained in the articles of agreement or application for the charter, that they intended to use $41,000 worth of property over and above the capitalization of the company, in the business thereof, was wholly voluntary on their part, and therefore constituted it no part of the capital of the company.

For the reasons stated I dissent from the majority opinion, and believe the alternative writ of mandamus heretofore issued should be made permanent.