THE STATE EX REL. CORINNE REALTY COMPANY v. CHARLES U. BECKER, Secretary of State.—8 S. W. (2d) 970.

Court en Banc, July 30, 1928.

*Carter, Jones & Turney* and *H. R. Small* for relator; *Swarts, Reyburn & Kawin* of counsel.

*North T. Gentry,* Attorney-General, and *Smith B. Atwood,* Assistant Attorney-General, for respondent.

RAGLAND, J.—Original proceeding in mandamus. Relator was incorporated under the laws of this State relating to the incorporation of manufacturing and business companies, on the 8th day of May, 1923. Its authorized capital stock is $5000, divided into fifty shares of the par value of $100 each. On October 3, 1927, its stockholders unanimously adopted the following resolutions:

"Resolved: That the original and present authorized, issued and outstanding fifty shares of common stock in this corporation, each of the par value of one hundred dollars be and the same are hereby changed into fifty shares of this corporation's common stock without par value, and that the holders of the shares of said outstanding common stock heretofore with a par value of one hundred dollars a share shall exchange the same, and the certificates therefor, for shares of common stock without par value and the certificates therefor on the basis of one share without par value for one share with par value of one hundred dollars, such shares without par value to be issued for and in place of said shares of common stock heretofore outstanding and without any capitalization or impairment of any existing surplus or accumulated and undistributed profits, the stated capital on such exchange remaining five thousand dollars.

"Resolved, further: That upon said exchange of fifty shares with par value for fifty shares without par value the three leases owned by

the company, including all surplus and profits therein accumulated and undistributed, be transferred to capital account so as to make and have a stated capitalization or capital of fifteen thousand dollars, or an increase of ten thousand dollars in stated capital, and that the number of shares without par value be increased from fifty to one thousand five hundred (1500) by adding one thousand four hundred and fifty (1450) stock dividend shares of no par value. . . ."

Thereafter the amendments of the original articles of association effected by the adoption of such resolutions were set forth in a certificate duly executed by the stockholders, and this certificate was presented to the Secretary of State for filing. At the time of such presentation, relator exhibited the State Treasurer's receipt showing the payment of $30 "on account of corporation tax on the capital stock." The Secretary of State refused to file the certificate, on the ground that the amount of the tax accruing to the State on account of the proposed amendments was $50. Relator instituted this proceeding to compel the Secretary of State to receive and file the certificate without further payment on its part.

The difference in the constructions which the parties have respectively placed on Section 5 of the Act of 1923, permitting stock corporations having shares with par value to so amend their articles of association as to authorize the issuance of shares without par value, gives rise to this controversy. Said Section 5 is as follows:

"Every corporation which shall obtain authority to issue shares without nominal or par value in exchange for shares with nominal or par value, in accordance with the provisions of this act, shall pay to the State Treasurer for such privilege a fee of the same amount, and computed in like manner as upon the organization of a new corporation, authorized to issue shares of the same number and kinds, less the aggregate amount of all sums previously paid for the privilege of organizing or of increasing the capital stock, . . . provided, however, that every corporation which shall issue shares without nominal or par value in accordance with the provisions of the preceding sections, shall pay a fee for such privilege, which in no case shall be less than twenty-five dollars. The Secretary of State shall not file any such certificate of amendment under the provisions of this act until he is furnished with a receipt for such fee from the State Treasurer." [Laws 1923, p. 365.]

Other constitutional and statutory provisions having an immediate bearing on the proper interpretation of the section are as follows:

"No corporation, . . . shall be created or organized under the laws of this State, unless the persons named as corporators shall, at or before the filing of the articles of association or incorporation, pay

into the state treasury fifty dollars for the first fifty thousand dollars or less of capital stock, and a further sum of five dollars for every additional ten thousand dollars of its capital stock. And no such corporation . . . shall increase its capital stock without first paying into the treasury five dollars for every ten thousand dollars of increase. . . ." [Sec. 21, Art. X, Const.]

"For the purpose of computing any organization taxes required to be paid under the laws of this State . . . each share of stock without any nominal or par value, under the provisions of this act, shall be considered the equivalent of a share having a nominal or par value of one hundred dollars." [Sec. 12, Laws 1921, p. 664.]

"Any corporation having shares without any nominal or par value in pursuance of this act, may increase or reduce the number of shares which it may issue, in the manner now provided by law for the increase or reduction of the capital stock of a similar corporation having shares with a par value." [Sec. 10, Laws 1921, p. 664.]

It is relator's contention that the proposed amendments to its articles of association operate to do just two things: first, to convert the fifty shares of its stock having a par value into fifty shares without par value; and, second, to add $10,000 to its "stated capital." It further contends that for the first said Section 5 prescribes a fee or tax of $25, and for the second Section 21 of Article X of the Constitution fixes a tax of $5, and that consequently the total amount due the State on account of the proposed changes in its articles of association is $30.

The Secretary of State on the other hand, reading said Section 5 in connection with said Section 12 of the Act of 1921, says that for the privilege it seeks relator must pay "a fee of the same amount, and computed in like manner as upon the organization of a new corporation, authorized to issue shares of the same number and kind, less the aggregate amount of all sums previously paid for the privilege of organizing or of increasing the capital stock;" that a new corporation proposing to issue 1500 shares of stock without par value would, for the purpose of computing the organization tax, be deemed to have a capital stock of $150,000, the tax on which, under the provisions of said Section 21 of the Constitution, would be $100; and that consequently the fee required of relator is $100 less the $50 paid by it at the time of its original incorporation.

In support of its contention relator takes the position that the "stated capital" provided for in its amended articles of association is "capital stock" within the meaning and purview of said Section 21 of the Constitution, and consequently that said Section 5 of the Act of 1923 and Section 12 of the Act of 1921, as construed by the Secretary of State, are in conflict with the constitutional provision.

The term "capital stock," properly speaking, signifies the amount fixed by the corporate charter to be subscribed and paid in or secured to be paid in by the shareholders of a corporation, either in money, or in property, labor or services, in the organization of the corporation or afterwards and upon which it is to conduct its operations. While the term "capital," properly means, not the capital stock, but the actual property or estate of the corporation, whether in money or in property. [5 Fletcher Cyc. Corps., secs. 3413, 3414.] Under the constitutional provision heretofore quoted, and which is reiterated in Section 9735, Revised Statutes 1919, the organization tax imposed on corporations is based on "capital stock," and not on "capital." So far as this provision is concerned, the value of the property which an organizing corporation actually owns and intends to employ in its business is wholly ·immaterial; whether such value is less, or in excess, of the amount named in its charter as capital stock, the latter alone controls in determining the amount of the organization tax. A manufacturing or business corporation may begin business with only half of its capital stock paid in, yet that fact in no way influences the amount of the organization tax required. In the course of time such corporation may accumulate a surplus many times larger than its original capital stock, and which it may devote to its business, and still no additional organization fee would be demandable of it, unless it increased its "capital stock."

In State ex rel. v. Roach, 266 Mo. 435, the articles of incorporation named $50,000 as the amount of the capital stock, but they further. recited that the capital stock, with the exception of $1000 in money, had been paid in personal property of the actual cash value of $91,000. The majority opinion, aside from the reasoning employed, seems to hold that $91,000 was in fact the amount of the capital stock prescribed by the articles of incorporation, construed as a whole. The decision is not tenable on any other theory; this is made manifest by the dissenting opinion in which the applicable principles of law are clearly set forth.

Corporations issuing shares without par value had not come into vogue in 1875. The new nomenclature employed by them, such as "stated capital," could not therefore have been in the minds of the framers of the Constitution when they phrased Section 21 of Article X. And in all enactments dealing with stock corporations; down to 1921, the Legislature had in mind corporations having a prescribed capital stock divided into shares of designated par value. While "capital stock" and "stated capital" have many attributes in common in delimiting the rights and obligations existing between the corporation and its shareholders on the one hand and the cor-

poration and its creditors on the other, they are by no means the same thing. "Stated capital" is the capital with which the corporation issuing shares without par value begins business, increased by any net additions thereto, or diminished by any net deductions therefrom. [Sec. 3, Act of 1921, Laws 1921, pp. 662-3.] But capital stock, as has been pointed out, may or may not represent the actual capital with which a corporation begins business or which it thereafter employs in its business. "Stated capital" may be increased by the corporation at will without increasing the number of its shares; but capital stock remains fixed, unless authority to increase it be obtained through an amendment to the corporate charter; and such increase when made implies the issuance of additional shares. Under the Act of 1921, a corporation issuing shares without par value may increase its stated capital from time to time indefinitely without the payment of an additional organization tax, unless it also increases the number of its shares. [Sec. 10, Laws 1921, p. 664.]

As corporations issuing shares without par value have no "capital stock" in the sense in which that term is used in Section 21, Article 10, of the Constitution, the Legislature has a free hand in the matter of imposing an organization tax upon such corporations, both as to the amount and the manner in which it shall be computed.

In providing in effect that corporations whose shares are without par value should, for the purpose of computing the organization tax, be deemed to have a capital stock equivalent in amount to the number of its shares multiplied by one hundred, the Legislature was merely bringing such corporations within the provisions of the general law with reference to such tax. What was said in State v. Pierce Petroleum Corporation, 2 S. W. (2d) 790, 792, is apposite here.

"From numerous provisions found throughout the act and particularly those of Section 12 considered as a whole, it is manifest that it was the purpose of the Legislature in permitting corporations to issue shares of stock without any nominal or par value to impose upon them, so far as was consistent with the general purpose of the act, the same burdens, restrictions and regulations which were then imposed by existing law upon other stock corporations, and which, as stated, were based in some respect on the amount of capital stock."

Aside from the alleged conflict between said Section 5 of the Act of 1923 and said Section 12 of the Act of 1921, on the one hand, and said Section 21 of the Constitution on the other, which we have considered, there is no constitutional question in the case. The acts challenged constitute a general law, and are uniform in their application. And there can be no question but that the State in granting corporations the privilege of issuing shares without par value

may impose such conditions as it chooses; if the conditions are regarded as too onerous, the privilege must be foregone. [Detroit Mortgage Corporation v. Secretary of State, 211 Mich. 320, 325; Roberts & Schaefer Co. v. Emmerson, 313 Ill. 137.]

It follows from the foregoing that the alternative writ should be quashed and the proceeding dismissed. It is so ordered. All concur, except *Gentry, J.*, not sitting.