ORVILLE LIVINGSTON, AS TRUSTEE OF DRESTE-ADAMS-FORD MUSIC CORPORATION, RESPONDENT, v. ROSCOE G. ADAMS AND GEORGE L. FORD, DEFENDANTS, HERMAN DRESTE, APPELLANT.—43 S. W. (2d) 836.

St. Louis Court of Appeals. Opinion filed December 8, 1931.

*Wm. R. Schneider* and *August A. Walz* for appellant.

*Grant & Grant* for respondent.

828

BECKER, J.—Plaintiff brought this action against three defendants in which he seeks to recover for unpaid subscriptions of capital stock of a Missouri corporation, the stock of which is without nominal or par value. A trial before the court resulted in plaintiff obtaining a judgment against the defendants. The judgment against defendant Herman Dreste was for $1172.50, from which judgment said defendant prosecutes this appeal.

Plaintiff in his petition alleges that the Dreste-Adams-Ford Music Corporation was a corporation duly organized and existing under the laws of the State of Missouri, and that on February 11, 1928, an involuntary petition was filed in the United States District Court and that said corporation was duly adjudicated a bankrupt and said proceedings were referred to the Honorable WALTER D. COLES as referee in bankruptcy; that thereafter plaintiff was duly elected trustee of said corporation and duly qualified as such, and that there was duly allowed against the estate of said bankrupt, claims aggregating the sum of $12,196.88; that exclusive of the liability of the defendants herein, the present known assets coming into the hands of the plaintiff as trustee, do not exceed $6500; that in addition thereto there will be costs of administration of said bankrupt estate, together with liability for counsel fees.

That on November 14, 1928, plaintiff, as trustee, as aforesaid, filed with the Honorable WALTER D. COLES, referee, a petition setting forth the matters hereinabove set out, and also alleging the liability of defendants on account of their subscriptions to the capital stock of said bankrupt, and requested to be authorized to institute suit against all of the delinquent subscribers to the capital stock of said

corporation to enforce liability of said subscribers, including defendants herein, and that in said petition filed before the referee, the plaintiff, as trustee, further alleged that there remained due and owing on the capital stock of said company the sum of at least $4665, and that defendants herein and each of them are liable as subscribers to the capital stock of said bankrupt. Thereupon plaintiff was authorized, empowered and directed by said referee in bankruptcy to bring suit against any and all persons who then were, or at any time may have been holders of the capital stock of said corporation or subscribers to the capital stock thereof, especially these defendants, to enforce any liability against them arising out of the subscriptions for said stock.

Plaintiff's petition in the instant case further alleges that this appellant is one of the original incorporators of said corporation which was incorporated on April 10, 1927, and that said shares of stock were of nominal or no par value, and that it began business with $5000, which consisted of $2000 cash, $3000 in property, but alleges that no money was put up as part of the capital and that the property transferred by the incorporators to said corporation in payment of said capital stock amounted to not more than $335; that as incorporators the defendant Dreste subscribed for 134 shares; Roscoe G. Adams and George L. Ford, 133 shares each, and that the defendants, by reason of said subscriptions, became liable to the creditors in the amount of $4665, and each defendant became liable as follows: Dreste, $1575; Adams, $1562.50 and Ford, $1527.50; that the unpaid part of the capital stock is a liability against defendants.

Defendant Dreste filed a general and special demurrer to said petition, which was overruled.

Defendant Dreste's answer is a general denial and set-off for $821.38.

At the opening of plaintiff's case defendant Dreste, by his counsel, objected to the introduction of any testimony on the ground:

"(1) That plaintiff is seeking to recover on unpaid subscription of capital stock when in fact there was no capital stock but only non-par value stock, thereby suing on one cause of action and recovering on another.

"(2) Because under Laws, 1921, pp. 661, 662 and 663, provides that non-par value stock may be sold for such consideration as may be prescribed or authorized in the articles of association; when not so prescribed therefor such consideration as may be fixed by the stockholders of such corporation or by the board of directors acting under the authority of the stockholders.

"(3) Because under the said act it is provided that any and all shares without nominal or par value issued for the consideration as prescribed or fixed as provided by section 5 shall be deemed fully

paid and be nonassessable and the holder of such shares shall not be liable thereon to the corporation or its creditors; all of which the pleadings fail to show.''

The demurrer *ore tenus* was overruled and defendant excepted.

There is testimony in the record which if believed supports the essential allegations set out in plaintiff's petition. Appellant, however, urges that while the facts may be conceded to be sufficient were plaintiff's case an action against the subscribers to stock in a corporation whose capital stock was made up of shares of designated par value, yet in the instant case, where the action is against the appellant as a subscriber to stock of a corporation whose capital is made up solely of non-par value stock, there is no liability on the part of appellant as such.

Appellant then argues that it appearing from the allegations of the petition that the articles of incorporation of the Dreste-Adams-Ford Music Corporation consisted solely of shares that were without nominal or par value, plaintiff's petition failed to state a cause of action and defendant's demurrer *ore tenus*, offered at the opening of the case, should have been sustained. Our consideration of the case has brought us to a contrary conclusion.

The original articles of association of the Dreste-Adams-Ford Music Corporation, which were introduced in evidence, contain the statement that the total number of shares authorized is 500, which shares are without nominal or par value; and further shows that 400 of the shares had been subscribed for, of which amount the defendant, Herman Dreste, had subscribed for 134 shares; and contains the further statement:

''(b) The amount of capital with which the corporation will begin business is five thousand dollars ($5,000), two thousand dollars ($2,000) of which is paid up in lawful money of the United States and is in the custody of the persons named as the first board of directors or managers, and three thousand dollars ($3,000) of which is actually paid up in property now in the custody of the persons named as the first board of directors or managers, an itemized description of which with the cash value of each item and location thereof, is as follows:

''10 Radios of cash value of .................$1500.00

''12 Phonographs of cash value of ............ 1500.00

''Said property being now located at the R. U. Leonori Auction & Storage Company, Grant and Laclede Avenues, in the City of St. Louis, Missouri.''

Appended to these articles of incorporation is the usual acknowledgment of the several subscribers to the stock and the further affidavit on the part of each of such subscribers, including the defendant, Herman Dreste, that the statements and matters set forth

are true and that they know the property described in article 3 of said articles of agreement and taken in payment of capital stock, and that the value placed on the same is the actual cash value of such property.

It is conceded that the liability of the stockholders of the Dreste-Adams-Ford Music Corporation for alleged unpaid subscriptions depends upon the laws of this State. The following sections of our statutes bear upon the question. They appear under article 16, chapter 32, Revised Statutes of Missouri, 1929, as follows:

"Section 5100. Stock Corporations, Other Than Building and Loan Associations, Trust Companies, etc.,—Shares, Par Value—Capital. Upon the formation . . . of any stock corporation . . . provision may be made for the issue of shares of preferred stock of any or all classes, or common stock of any class, or both preferred and common stock, without any nominal or par value, by stating in the articles of association or certificate of incorporation . . . :

"(a) The number of shares with nominal or par value, and the number of shares without nominal or par value, that may be issued by the corporation, and the classes, if any, into which such shares are divided:

"(b) The nominal or par value of shares of stock other than shares which it is stated are to have no nominal or par value;

"(c) The amount of capital with which the corporation will begin business.

"Section 5101. Amount of Capital Stock Shall Be Fully Paid In. No corporation authorized to issue shares of stock without nominal or par value in pursuance of the provisions of this article, shall begin to carry on business, or shall incur any indebtedness, until the amount of the capital with which it will begin business stated in pursuance of section 5100 of this article, shall have been fully paid in cash or in property.

"Section 5104. Authorized Shares May Be Issued When. Such corporation may issue and may dispose of its authorized shares having no nominal or par value, from time to time, for such consideration as may be prescribed or authorized in the articles of association or certificate of incorporation . . .

"Section 5105. Shares Shall Be Deemed Fully Paid and Nonassessable. Any and all shares without nominal or par value issued for the consideration as prescribed or fixed in accordance with the provisions of section 5104 of this article shall be deemed fully paid and be nonassessable, and the holder of such shares shall not be liable thereon to the corporation or to its creditors."

Prior to the Act of 1921 there was no authority for corporations to issue shares of stock without nominal or par value. And as to

corporations organized with nominal or par value stock, it has uniformly been held that the amount of money or property represented as the original capital is a trust fund for the benefit of its creditors, and that creditors have a right to rely upon the assumption that the original stock so subscribed for has been fully paid (Christman Sawyer Banking Co. v. Mfg. Co., 168 Mo. 634, 1. c. 643, 68 S. W. 1026; Rogers v. Mining Co., 185 Mo. App. 1. c. 675, 171 S. W. 676; Hodde v. Hahn, 283 Mo. 320, 1. c. 332, 222 S. W. 799), and that the property accepted in payment of capital stock of the corporation has been taken at fair valuation, and that the issuance of capital stock for property not equal to its par value is a fraud in law upon its creditors. [Van Cleve v. Berkley, 143 Mo. 109, 44 S. W. 743; Berry v. Rood, 168 Mo. 316, 1. c. 331, 67 S. W. 644; Shields v. Hobart, 172 Mo. 491, 72.S. W. 699; Hodde v. Hahn, supra; Meyer v. Mining Co., 192 Mo. 162, 1. c. 189, 90 S. W. 821.]

It is well settled law in this State that in so far as creditors are concerned, unpaid stock subscriptions, in corporations organized with nominal or par value stock, are in equity considered assets of the corporation and that they may be subjected to the payment of the debts of the corporation where the creditor gave it credit relying upon the belief that the stock had been fully paid. [Berry v. Rood, supra; Chrisman-Sawyer Banking Co. v. Mfg. Co. supra; Morgan County v. Allen, 103 U. S. 1. c. 509; Bernheimer v. Converse, 206 U. S. 517.]

"The payment of stock subscriptions in property at visionary, merely speculative or inflated value, is an abuse of our statutes, and there are penalties and liabilities for such abuses, and this court has always afforded remedies for such abuses, . . . In this case it appears from the allegations of the petition that the full amount of the capital stock provided in the articles of association was subscribed by the defendants . . .; under our laws if they have not paid each the amount of stock for which he subscribed, each is liable for the amount unpaid by him on such subscription, but neither is liable for the amount unpaid by any other stockholder." [1st °Nat'l Bank of Deadwood, S. D., v. Rockefeller, 195 Mo. 15, 1. c. 54-55, 93 S. W. 761.]

"It is the settled doctrine of this court, as well as of the Supreme Court of Missouri, that unpaid subscriptions to the stock of a corporation constitute a trust fund for the benefit of creditors, which may not be given away or disposed of by it, without consideration, or fraudulently to the prejudice of creditors." [Fogg v. Blain, 139 U. S. 118; Leibke v. Knapp, 79 Mo. 22, 1. c. 24.]

The above principles were definitely established when the Act of 1921 was passed, under which corporations could be formed with

common stock without any nominal or par value. To what extent are these settled principles modified, if at all, by the Act of 1921, which permits the incorporation of companies without any nominal or par value stock?

Section 5100, Revised Statutes 1929, provides for the formation of such corporations "by stating in the articles of association or certificate of incorporation . . . in lieu of statements which may be prescribed by law, as to the amount of capital stock and the number and par value of shares into which it is divided:

"a. . . . The number of shares without nominal or par value, that may be issued by the corporation. . . .

"b. . . .

"c. The amount of capital with which the corporation will begin business. . . ."

Section 5101 provides that no corporation authorized to issue shares of stock without nominal or par value shall begin to carry on business or shall incur any indebtedness *until the amount of the capital* with which it will begin business, stated in pursuance of section 5100, *shall be fully paid in cash or property.*

Section 5105 provides that any and all shares without nominal or par value *issued for the consideration fixed in accordance with the provisions of section 5104,* shall be deemed fully paid and be nonassessable, and *the holders of such shares* shall not be liable thereon to the corporation or to its creditors.

Section 5110 provides that shares of stock without nominal or par value shall be deemed to be an aliquot part of the aggregate capital of the corporation issuing the same, and equal to every other share of stock of the same class.

The statutes of New York, Illinois, Idaho, New Jersey and other states permitting the issuance of no par value stock, provide, as does our own act, for a statement in the certificate of incorporation of the amount of capital that the corporation begins business with, and this stated capital is the so-called "trust fund" for the benefit of its creditors. [See State ex rel. Standard Tank Co. v. Sullivan, Secretary of State (Mo.), 221 S. W. 728, 1. c. 737.]

Under the sections of our statutes cited supra, the Legislature did not intend to abolish the trust fund theory as respects non-par value stock corporations. This is evidenced from the very language of the sections themselves, for it is provided by them that no such corporations shall begin business until the amount of the capital it will begin business with, as *stated* in its articles of association, shall have been fully paid in cash or property, and such *stated* capital shall be the capital with which the corporation shall begin business (sec. 5102) and all shares *issued for such consideration* shall be deemed fully paid and be nonassessable, and that the holders of

*such shares* shall not be liable thereon to the corporation or to its creditors, clearly showing that the general rules regarding liability for unpaid stock subscriptions for par value corporation stock would otherwise apply, namely a liability therefor of the corporation to its creditors. In our opinion these sections intend that the payment of the consideration that may be prescribed or authorized in the articles of association or certificate of incorporation for which the non-par value stock is issued by the corporation, must in fact be paid, and that the amount which each subscriber for shares may be liable for is to be determined according to the provisions of section 5110 which provides that shares of stock of no par value shall be deemed to be an aliquot part of the aggregate capital of the corporation issuing the same and equal to every other share of stock of the same class.

Our Supreme Court has specifically held that there can be no question but that the State, in granting corporations the privilege of issuing shares without par value, may impose such conditions as it chooses; if the conditions are regarded as too onerous, the privilege must be foregone. [State ex rel. Corinne Realty Co. v. Becker, Secretary of State (Mo.), 8 S. W. (2d) 970.] [See also Detroit Mortgage Corp v. Secretary of State, 211 Mich. 320, 1. c. 325, 178 N. W. 697, 182 N. W. 526; Roberts & Schaefer Co. v. Emmerson, 313 Ill. 137, 144 N. E. 818.]

Reading the Act of 1921 as a whole "it is manifest that it was the purpose of the Legislature in permitting corporations to issue shares of stock without any nominal or par value to impose upon them, so far as was consistent with the general purpose of the act, the same burdens, restrictions and regulations, which were then imposed by existing law upon other stock corporations, and which, as stated, were based in some respect on the amount of capital stock." [State v. Pierce Petroleum Corp., 318 Mo. 1020, 1. c. 1025, 2 S. W. (2d) 790; State ex rel. v. Becker, supra.]

In the instant case, having elected in the articles of association to state that the amount of capital with which the corporation will begin business is $5000, $2000 of which was stated as being cash and the balance paid up in property of the cash value of $3000, when in point of fact only a fractional part of such capital, either in cash or property, was ever paid up by the original subscribers, upon the bankruptcy of the corporation, and under the facts alleged in the petition herein, we rule that a subscriber to the original stock, such as appellant, must be held to have agreed to contribute a definite amount to the capital stock, and having failed to do so must respond in a proper action for the difference between what he actually agreed to pay for his stock and the actual consideration which he may have paid the company therefor. It follows that the demurrer *ore tenus* was well **ruled.**

It is further urged that since the record discloses that the defendant, Dreste, had advanced or loaned the company the sum of $466.42, he should have been permitted to set-off same against any alleged balance for any unpaid stock that might be found due from him to the corporation.

Debts to be subject to set-off must be mutual; must be in the same right. The case before us, however, is not of that character. The debt which appellant owed for his stock was a trust fund devoted to the payment of all the creditors of the company. As soon as the company became insolvent the right of set-off for an ordinary debt to its full amount ceased. It became a fund belonging equally in equity to all the creditors and could not be appropriated by the debtor to the exclusive payment of his own claim. [Sawyer v. Hoag, 84 U. S. 610, 1. c. 623.]

The judgment is for the right party and finding so error prejudicial to the rights of the appellant, the judgment should be affirmed. It is so ordered. *Haid, P. J.,* and *Nipper, J.,* concur.