In re MARTA GROUP, INC., Debtor.

MARTA GROUP, INC., Plaintiff,

v.

PERLSTEIN'S, INC., t/a Perlstein's, Defendant.

Bankruptcy No. 83–01276G.

Adv. No. 83–1351G.

United States Bankruptcy Court, E.D. Pennsylvania.

March 5, 1985.

Pace Reich, Geoffrey L. Steiert, Pincus, Verlin, Hahn, Reich & Goldstein, Philadelphia, Pa., for debtor/plaintiff, Marta Group, Inc.

Flora L. Becker, Leadbetter & Becker, Philadelphia, Pa., for defendant, Perlstein's, Inc. t/a Perlstein's.

David S. Hope, Esquire, Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., for Creditors' Committee.

## OPINION

EMIL F. GOLDHABER, Chief Judge:

The primary proposition we face in the case at bench is whether a creditor may set off its obligation to a chapter 11 corporate debtor against a debt instrument issued by the debtor where the debt instrument provides that the claim it represents is subordinate to the rights of all other creditors of the debtor. Due to the reasons espoused below, we conclude that setoff is not allowable.

The facts of this case are as follows:[1] The debtor filed a petition for reorganization under chapter 11 of the Bankruptcy Code ("the Code"). Prior to the filing the debtor was a nonprofit, cooperative, retailers' buying group which attempted to obtain goods at discounted prices for its members through their combined buying power.

Several years prior to the filing of the petition, Perlstein's, Inc. ("Perlstein"), an appliance dealer, attended a meeting of appliance dealers convened by the debtor for the purpose of encouraging these dealers to become members of the cooperative. At the meeting one of the debtor's officers accurately stated that its outstanding indebtedness at that time was only $60,000.00 but within a year the figure had grown to $385,000.00. The officer also accurately stated that members of the coop-

1. This opinion constitutes the findings of fact and conclusions of law required by Bankruptcy Rule 7052 (effective August 1, 1983).

erative would likely be able to purchase appliances from it at lower prices than elsewhere. Although Perlstein joined the cooperative due, in part, to these two statements, both expressions were true at the time and neither was made with fraudulent intent.

Perlstein was drafted into the cooperative on its payment of $25,000.00 to the debtor in exchange for which Perlstein received a "subvention certificate." Its membership in the cooperative was maintained by paying an additional $7,000.00 in dues. As a constituent of the cooperative, Perlstein purchased on credit through the debtor merchandise worth $30,574.27 for which no payment has been made. Due to the spiraling cost of dues, Perlstein resigned from the cooperative although the record failed to disclose adequately when that action was taken.

The debtor filed the complaint before us to recover on the $30,574.27 debt and we have found that this amount is still owing. In its answer and amended answer to the debtor's complaint, Perlstein counterclaimed by alleging its right to set off the amount it paid to the debtor against the $30,574.27 obligation. Perlstein further asserted causes of action for common law fraud and violations of "§ 10(b) [15 U.S.C. § 78(j)] [2] of the Securities and Exchange Act [of 1934] [3] ... and Rule 10(b)(5) [4] promulgated thereunder ...." In its brief Perlstein refers to "the Securities Exchange Act" but the only statute from which it quotes is the "Securities Act of 1933." [5]

The 1933 and 1934 federal securities statutes were Congress's response to its conclusion, made in the early 1930's, that the paucity of existing federal securities law and the quiltwork of state laws on the subject were inadequate to protect the investment community. 11 (part 1) Sowards, *Business Organizations* § 1.02 at pp. 1–2 to 1–2.1 (A. Sommer, Jr. ed. 1984). The first act, the Securities Act of 1933, mandates that entities issuing securities file with the Securities and Exchange Commission a registration statement containing financial and other pertinent material. One commentator has referred to this provision as the "heart of the 'truth in securities' law." *Id.* at p. 1–4. Also, a prospectus, containing that portion of the information in the registration statement considered necessary to enable an investor to evaluate the securities and to make an informed judgment whether or not to purchase, must be made available to all purchasers and to all persons who receive written orders to sell. The statute's civil liability provisions are:

2. § 78j. Manipulative and deceptive devices. It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—
 (a) To effect a short sale, or to use or employ any stop-loss order in connection with the purchase or sale, of any security registered on a national securities exchange, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.
 (b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.
15 U.S.C. § 78j.

3. 15 U.S.C. §§ 78a to 78kk.

4. Reg. § 240.10b–5. It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails, or of any facility of any national securities exchange,
 (a) to employ any device, scheme, or artifice to defraud,
 (b) to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
 (c) to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.
17 C.F.R. § 240.10b–5 (1984) (Rule 10b–5).

5. 15 U.S.C. §§ 77a to 77bbbb.

Sections 11, 12(1), and 12(2) [15 U.S.C. §§ 77k, 77*l*(1) and 77*l*(2)]. Section 11 concerns civil liability for material misstatements or omissions in a *registration statement*. Section 12(1) deals with civil liability for offers or sales of securities in violation of Section 5 of the Act, i.e., *unregistered* securities required to be registered. Section 12(2) is concerned with liability for offers or sales of *any* securities, registered or unregistered and, with one exception, whether or not the security or transaction is exempted from registration, if material misstatements or omissions occur in connection with such offers or sales. Additionally, Section 15 provides for liability of persons who control any person liable under Sections 11 and 12.

11 (part 1A), *Business Organizations*, § 9.01 at 9–2 to 9–3 (emphasis in original, footnotes omitted). Section 17, 15 U.S.C. § 77q, of the 1933 Act, is the general fraud provision of the statute and it prohibits the use of fraud in the offer or sale of securities by means of interstate commerce or the mails. The statute does not expressly confer a private right of action for violations of § 17 and although the courts have reached contradictory conclusions, the consensus hold that there is no implied cause of action under § 17. *See, e.g., Shull v. Dain, Kalman & Quail, Inc.*, 561 F.2d 152 (5th Cir.1977), *cert. den.*, 434 U.S. 1086, 98 S.Ct. 1281, 55 L.Ed.2d 792 (1978). The lack of a private right of action under § 17 is largely just a theoretical shortcoming since under an analogue of this provision private recourse may be had under § 10(b) of the 1934 Act, which is discussed below.

As is apparent from their names, one year after passage of the Securities Act of 1933, Congress enacted the Securities Exchange Act of 1934. This Act has two general purposes. "First, the 1934 Act was designed, in part, to supplement the disclosure requirements of the Securities Act of 1933 ... by compelling corporations to furnish the record holders and prospective purchasers of their securities information about corporate affairs substantially comparable to that required of issuers un-

der the 1933 Act. The second purpose of the 1934 Act is to regulate post-distribution purchases and sales of securities." 11A (part 1), *Business Organizations* § 1.01, pp. 1–2 to 1–3. This act "contains three specific civil liability sections (9)(e), 16(b) and 18 [15 U.S.C. §§ 78i(e), 78p(b) and 78r, respectively]) and a general provision voiding contracts made in violation of the act (29(b)) [15 U.S.C. § 78cc(b)]." III Loss, *Securities Regulations*, p. 1746 (1961). In addition, the federal courts have recognized "implied" rights of action under other provisions of the statute that merely declare proscribed conduct unlawful without explicitly authorizing private suits. 11A (part 1), *Business Organizations* § 5.01, p. 5–2; *See, e.g., J.I. Case Co. v. Borak*, 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964).

One of the most commonly employed causes of action under the 1934 Act stems from § 10(b), 15 U.S.C. § 78j(b), of that statute which, in 1942, spawned the promulgation of Rule 10b–5. The courts have held that an implied cause of action lies under § 10(b) and Rule 10–5. *Kardon v. National Gypsum Co.*, 69 F.Supp. 512 (E.D.Pa.1946); *Fischman v. Raytheon Manufacturing Co.*, 188 F.2d 783 (2d Cir. 1951); *Supt. of Insurance v. Bankers Life & Casualty Co.*, 404 U.S. 6, 13 n. 9, 92 S.Ct. 165, 169 n. 9, 30 L.Ed.2d 128 (1971). As noted above, in its complaint, Perlstein has advanced a cause of action under Rule 10b–5.

Applying the Securities Act of 1933 and the Securities Exchange Act of 1934 to the case before us, Perlstein contends that the subvention certificate is a security and that "the antifraud provisions of the security regulation law extend to" it. Perlstein apparently is proceeding only under the general fraud provisions of § 17 of the 1933 Act and § 10(b) and Rule 10b–5 of the 1934 Act rather than under the more specific registration or reporting requirements. As we stated above, there is no private cause of action under § 17 of the 1933 Act and, thus, based on Perlstein's counterclaims, no liability lies under this statute.

Under the 1934 Act and Rule 10b–5 Perlstein asserts causes of action on the bases that the debtor allegedly and intentionally understated the amount of its aggregate outstanding indebtedness to induce Perlstein to join the cooperative and purposefully misstated its belief that membership in the cooperative would save Perlstein money. We found earlier in this opinion that both statements were true and that the debtor had no intent to deceive when it made either statement. The Supreme Court has stated that fraudulent intent is a requisite to relief under § 10(b) or Rule 10b–5. *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976). Thus, Perlstein has no basis for relief under the 1934 Act. With the conclusion that no liability lies under either the 1933 Act or the 1934 Act, we need not reach the question of whether the subvention certificate is a security within the meaning of these statutes.

Perlstein's cause of action for relief on a theory of common law fraud is predicated on the same allegations as those set forth under the above discussion of § 10(b) and Rule 10b–5 of the 1934 Act. Due to a lack of intent to deceive, Perlstein cannot prevail on such an action for common law fraud. *Thomas v. Seaman*, 451 Pa. 347, 350, 304 A.2d 134 (1973).

With the determination that Perlstein's cause of action for common law fraud and for violations of the federal secu-rities statutes are without merit, we must resolve the question of its entitlement to setoff under 11 U.S.C. § 553.[6] Subject to certain exceptions, this provision allows a netting of mutual debts between the estate and a creditor. Section 553 "does not, however, create any new right of setoff when none exists under nonbankruptcy law. It merely recognizes the existence of the doctrine of setoff, and adds some additional restrictions to its application." 4 *Collier on Bankruptcy* § 553.02 at p. 553–9 (15th ed. 1984).

In the case at bench Perlstein asserts that the $25,000.00 payment in exchange for the subvention certificate and Perlstein's $7,000.00 payment of dues to the cooperative obligate the debtor to repay Perlstein and so this would be subject to setoff under § 553. As to the dues, Perlstein presents no theory which would require the debtor to repay such money, and we likewise perceive none. Consequently, the debtor owes Perlstein no debt for the previously paid dues, and thus the amount representing such dues is not subject to setoff.

On the matter of the $25,000.00 sum paid by Perlstein for admission to the cooperative in exchange for which Perlstein received a subvention certificate, such a certificate may be issued under applicable Pennsylvania law by a nonprofit corporation if the bylaws so provide. 15 Pa.Cons. Stat. § 7542(a).[7] The state's corporate statute provides that by resolution of the

---

6. § 553. Setoff
   (a) Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case except to the extent that—
   (1) the claim of such creditor against the debtor is disallowed other than under section 502(b)(3) of this title;
   (2) such claim was transferred, by an entity other than the debtor, to such creditor—
   (A) after the commencement of the case; or
   (B)(i) after 90 days before the date of the filing of the petition; and

(ii) while the debtor was insolvent; or
   (3) the debt owed to the debtor by such creditor was incurred by such creditor—
   (A) after 90 days before the date of the filing of the petition;
   (B) for the purpose of obtaining a right of setoff against the debtor.
   11 U.S.C. § 553(a).

7. § 7542 Subventions
   (a) General rule.—The bylaws may provide that the corporation shall be authorized by resolution of the board of directors or other body to accept subventions from members or nonmembers on terms and conditions not inconsistent with this article, and to issue certificates therefor. The resolution of the board or other body may provide that holders of subvention certificates shall be entitled to a fixed or contingent periodic payment out of

board the holders of a corporation's subvention certificates shall be entitled to a fixed or contingent periodic payment out of the corporate assets equal to a percentage of the original amount or value of the subvention. § 7542(a). The statute further states that on dissolution of the corporation the holders of the subvention certificates may be entitled to repayment of the original purchase price of the subvention. § 7542(g). It thus appears that subvention certificates are, in fact, a particular variety of debt instrument and, as such, ostensibly would be subject to setoff against a creditor's obligations to the debtor. Allowing the right of setoff would, of course, diminish the debtor's recovery against Perlstein. With less funds to augment the estate, there would be less money to distribute in bankruptcy to the debtor's creditors. Thus, the propriety of the setoff of the subvention certificate pits one of the holders of such a document against the other creditors of the debtor. As stated in Pennsylvania's corporation statute, "The rights of holders of subvention certificates shall at all times be subordinate to the rights of creditors of the corporation." § 7542(a). The statute elsewhere states that, on dissolution of a corporation, the holders of its subvention certificates may receive reimbursement for the purchase price only "after the claims of creditors have been satisfied." Since the claims of general creditors are favored by Pennsylvania law over the claims of subvention holders on their certificates, and since setoff would favor the subvention holder rather than the general creditors, we conclude that setoff is not

allowable. This result is supported by an analogous line of authority barring setoff where the trustee of a debtor corporation seeks recovery from a stockholder of the amount of an unpaid subscription for stock although the debtor owes money to the stockholder. 4 *Collier on Bankruptcy* ¶ 553.04 at pp. 553–26 to 553–30 (15th ed. 1984); *Sawyer v. Hoag,* 84 U.S. (17 Wall.) 610, 622, 21 L.Ed. 731 (1873).[8]

In summary, we will enter an order denying the relief requested in Perlstein's counterclaims. Since there is no dispute that Perlstein owes the debtor $30,574.27, we will enter judgment in that amount in favor of the debtor and against Perlstein.

---

the corporate assets equal to a percentage of the original amount or value of the subvention. The rights of holders of subvention certificates shall at all time be subordinate to the rights of creditors of the corporation.

\* \* \* \* \* \*

(g) Rights of holders on dissolution.—Holders of subvention certificates, upon dissolution of the corporation, shall be entitled, after the claims of creditors have been satisfied, to repayment of the original amount or value of the subvention plus any periodic payments due or accrued thereon, unless a lesser sum is specified in the resolution of the board of directors or other body concerning such subvention.

15 Pa.Cons.Stat. § 7542.

8. Debts to be subject to setoff must be mutual; must be in the same right. The case before us, however, is not of that character. The debt which appellant owed for his stock was a trust fund devoted to the payment of all the creditors of the company. As soon as the company became insolvent, the right of setoff for an ordinary debt to its full amount cease. It became a fund belonging equally in equity to all the creditors and could not be appropriated by the debtor to the exclusive payment of his own claim. *Sawyer v. Hoag,* 84 U.S. (17 Wall.) 610, 623, 21 L.Ed. 731.

*Livingston v. Adams,* 226 Mo.App. 824, 43 S.W.2d 836 (1931).